**Exhibit J – Email Correspondence: Notice of Charges and Plaintiff's Defense Responses**

**Case Reference:** No. 25–CV–842–SPM

**Description & Summary of Issues:**

This exhibit contains critical email correspondence related to a Notice of Charges sent by Assistant Superintendent Bradley Hyre on **December 6, 2024,** and Plaintiff's written responses intended to provide defense against these charges. Despite Plaintiff's effort to exercise his due process rights, Hyre explicitly stated in a **December 9, 2024 email** that the District planned to use Plaintiff's own defense responses as additional evidence of misconduct, signaling a predetermined outcome in violation of procedural due process.

**Key Violations Documented:**

1. **Violation of Constitutional Due Process:**

   o   Plaintiff was banned from Collinsville CUSD #10 property on December 6, prior to any hearing. Plaintiff's responses to defend himself were improperly treated as additional evidence of misconduct. This violates procedural due process rights under the **Fourteenth Amendment (U.S. Constitution)** and **Article I, Section 2 (Illinois Constitution)**, clearly prohibiting prejudgment of guilt and requiring an unbiased opportunity to be heard (Mathews v. Eldridge, 424 U.S. 319 (1976); Goldberg v. Kelly, 397 U.S. 254 (1970)).

2. **Illinois Open Meetings Act (5 ILCS 120/1 et seq.):**

   o   Conducting disciplinary decisions outside of transparent procedures, effectively deciding Plaintiff's guilt prior to a scheduled public meeting, violates transparency and open meeting mandates. Illinois law requires substantive deliberations and decisions involving disciplinary actions to occur in public meetings, preserving transparency and accountability (5 ILCS 120/2(e), 5 ILCS 120/3).

3. **Illinois Administrative Code Violations:**

   o   District conduct violated explicit procedural safeguards established under **23 Ill. Admin. Code § 375.10**, which mandates impartial and unbiased administrative hearings and explicitly prohibits pre-determined outcomes prior to due process hearings.

4. **Illinois School Code Violations (105 ILCS 5/10-22.6):**

- ○ Plaintiff's due process rights as guaranteed under Illinois School Code provisions concerning fair disciplinary hearings were clearly denied. Plaintiff was denied meaningful participation, including the ability to present a defense, witnesses, or attend personally to address the allegations.

**Details from the Email Correspondence:**

- **December 9, 2024, email from Assistant Superintendent Bradley Hyre explicitly states:**

"...the District intends to use the emails you sent on December 6, 7, 8, and 9, 2024 and any additional emails you may send between now and the hearing as further evidence of your ongoing misconduct."

- **Plaintiff's responses included** detailed defenses refuting allegations, submitted in good faith and intended explicitly as exculpatory material to inform the school board's judgment. Plaintiff included Collinsville Police Officer Foley, Maryville Police SRO Leffler, and his attorney at the time, Tony Dos Santos, in all correspondence to ensure transparency and proper representation.

- At the **closed school board meeting on December 18, 2024,** Plaintiff explicitly asked if the school board had received his defense responses. The attorney presiding at the meeting confirmed receipt, acknowledging Plaintiff's submission.

**Relevant Laws, Statutes, and Case Law:**

- **Fourteenth Amendment, Due Process Clause** (U.S. Const.)

- **Illinois Constitution, Article I, § 2** (Due Process)

- **Illinois Open Meetings Act** (5 ILCS 120/1 et seq.)

- **Illinois School Code** (105 ILCS 5/10-22.6)

- **Illinois Administrative Code** (23 Ill. Admin. Code § 375.10)

- **Mathews v. Eldridge,** 424 U.S. 319 (1976) (Procedural Due Process)

- **Goldberg v. Kelly,** 397 U.S. 254 (1970) (Pre-hearing due process rights)

- **Cleveland Bd. of Educ. v. Loudermill,** 470 U.S. 532 (1985) (Right to impartial pre-disciplinary hearing)

**Recipients Included in Original Correspondence:**

- Bradley Hyre, Assistant Superintendent, CUSD #10

- Attorney Tony Dos Santos

- Officer Foley, Collinsville Police Department (School Resource Officer)

- Officer Leffler, Maryville Police Department (School Resource Officer)

- Attorneys at Guin Mundorf LLC (Bmundorf@gmschoollaw.com, Dana Bond, Sguin@gmschoollaw.com, Cmundorf@gmschoollaw.com, Ehanses@gmschoollaw.com, Amcdaniel@gmschoollaw.com, Jbernard@gmschoollaw.com)

- Attorney David Fahrenkamp (dfahrenkamp@gmail.com)

- Guardian ad Litem Michael Wesley

**Documentation Provided:**

- Email from Bradley Hyre dated December 9, 2024

- Plaintiff's formal request for legal opinion submitted April 15, 2025

**Submitted by:**

Jeffrey Luffman (Plaintiff, Pro Se)

jeffrey.luffman@outlook.com

636-675-4864

**Date Submitted: May 5, 2025**

 Outlook

## Fw: Notice of Charges and Hearing

**From** Jeffrey Luffman <jeffrey.luffman@outlook.com>

**Date** Tue 02/25/2025 8:23 AM

**To** Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; CPDFOIA <CPDFOIA@collinsvilleil.org>

Good morning. Both of you were addressed on this email. Did you know In Illinois, as a sworn law enforcement officer and School Resource Officer (SRO), Officer Frank is legally obligated to take action upon gaining knowledge of criminal activity, including alleged felonies committed by a school principal. Under the Illinois Police Training Act, specifically 50 ILCS 705/6.3, officers are required to "immediately report any conduct" that may constitute a violation to their supervising officer. This mandate ensures that all allegations of criminal behavior are properly documented and investigated.

ilga.gov

Furthermore, the Illinois Uniform Crime Reporting Act (50 ILCS 709) obligates law enforcement agencies to submit detailed reports of criminal incidents to the Illinois State Police. This includes incidents occurring within school environments, thereby ensuring transparency and accountability in handling such matters.

ilga.gov

Were you all aware that the deletion of public records is a class 4 felony according to the Illinois Local Records act?

Now that you are aware, will you investigate the on going criminal conduct of the to people involved?

Did either of you report this?

6366754864
jeffrey.luffman@outlook.com

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Tuesday, February 25, 2025 8:08 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>; mrozycki23@yahoo.com <mrozycki23@yahoo.com>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>; npenz@usatoday.com <npenz@usatoday.com>; newswatch@foxnews.com <newswatch@foxnews.com>; newsmanager@foxnews.com

<newsmanager@foxnews.com>; nbcnews.editors@nbcuni.com <nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

**To Whom It May Concern,**

I am writing to express my urgent concern regarding the inability to access the documents I have requested from the school district. Despite my formal FOIA requests, I have received no access to the necessary records. Compounding this issue is the fact that documents are reportedly being deleted from the district's server, and there is a ticking clock on how long these deleted files will remain retrievable in the system vault.

This situation raises significant concerns:
1.  **Failure to Provide Requested Documents**
    • My FOIA requests have not been fulfilled, denying me the ability to review critical documents necessary for addressing my ongoing parental rights complaint.
    • This lack of access conflicts with the Illinois Freedom of Information Act, which mandates timely access to public records unless an exemption applies.
2.  **Risk of Permanent Loss of Deleted Documents**
    • The ongoing deletion of records from the server creates a risk of permanent loss if action is not taken immediately to preserve and retrieve these files.
    • Under the Illinois Local Records Act, public entities are required to retain records in accordance with approved schedules, and unauthorized deletion could be a violation of this law.
3.  **Transparency and Due Process Concerns**
    • The inability to access these records impacts my constitutional right to petition public officials for redress and my right to due process under the First and Fourteenth Amendments.
    • The deletion of potentially relevant records undermines the transparency required under the Illinois Open Meetings Act and raises questions about compliance with legal obligations.

Given the urgency of this situation, I am formally requesting the following:
1.  **Immediate Access to All Requested Documents**
    • Prompt fulfillment of my FOIA requests and access to all relevant records, including those currently stored in the system vault.
2.  **Preservation of Deleted Records**
    • A halt to further deletions and immediate action to preserve all records currently stored in the system vault.
3.  **Written Confirmation of Actions Taken**
    • Confirmation of what steps are being taken to address these concerns, including the retrieval and preservation of deleted records.

The delays and potential loss of documents are severely impacting my ability to advocate effectively in this matter. I ask for your immediate attention to these concerns and request an acknowledgment of this email and my requests.

I am using the Illinois Freedom of Information Act (FOIA) to request all emails and communications regarding myself, my child, and my child's mother exchanged between officials acting on behalf of the state. FOIA is an essential tool that allows me to ensure transparency and hold public entities accountable for their actions.

I am requesting these records to confirm whether officials involved in decisions about my child's education and wellbeing are acting in compliance with state and federal laws. By obtaining these communications, I aim to ensure that any actions or discussions about my family are properly documented and transparent.

My request specifically seeks emails and correspondence that mention me, my child, or my child's mother. This includes communications between teachers, administrators, school board members, and other representatives of the school district or state. This scope is important because it allows me to fully understand how decisions impacting my child have been made and ensures that no critical information is being withheld.

Thank you for your prompt response.

Sincerely,
Jeff Luffman

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Date:** Monday, December 9, 2024 at 11:33
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>, Lauren Bonner <lauren_bonner@durbin.senate.gov>, Public Access <Public.Access@ilag.gov>, tony@millerkinglaw.com <tony@millerkinglaw.com>, publicaccess@ilag.gov <publicaccess@ilag.gov>, Laura Bauer <lbauer@cusd.kahoks.org>, Brad Skertich <bskertich@cusd.kahoks.org>, Mark Foley <mfoley@cusd.kahoks.org>, Frank Leffler <fleffler@cusd.kahoks.org>, Susan Frechman <sfrechma@cusd.kahoks.org>, Shelia Schneider <shelia@thekaufmanfund.org>, Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>, Maryville Online <gradadmissions@online.maryville.edu>, mrozycki23@yahoo.com <mrozycki23@yahoo.com>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>, npenz@usatoday.com <npenz@usatoday.com>, newswatch@foxnews.com <newswatch@foxnews.com>, newsmanager@foxnews.com <newsmanager@foxnews.com>, nbcnews.editors@nbcuni.com <nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

To Whom It May Concern,

I am writing to express my urgent concern regarding the inability to access the documents I have requested from the school district. Despite my formal FOIA requests, I have received no access to the necessary records. Compounding this issue is the fact that documents are reportedly being deleted from the district's server, and there is a ticking clock on how long these deleted files will remain retrievable in the system vault.

This situation raises significant concerns:

1.    **Failure to Provide Requested Documents**
   • My FOIA requests have not been fulfilled, denying me the ability to review critical documents necessary for addressing my ongoing parental rights complaint.
   • This lack of access conflicts with the Illinois Freedom of Information Act, which mandates timely **access** to **public** records unless an exemption applies.

2.    **Risk of Permanent Loss of Deleted Documents**
   • The ongoing deletion of records from the server creates **a** risk of permanent loss if action is not taken immediately to preserve and retrieve these files.
   • Under the Illinois Local Records **Act,** public entities are required to retain records in accordance with approved schedules, and unauthorized deletion could be a violation of this law.

3.    **Transparency and Due Process Concerns**
   • The inability to access these records impacts my constitutional right to petition public officials for redress and my right to due process under the First and Fourteenth Amendments.
   • The deletion of potentially relevant records undermines the transparency required **under the Illinois Open Meetings Act** and raises questions about compliance with legal obligations.

Given the urgency of this situation, I am formally requesting the following:

1.    **Immediate Access to All Requested Documents**
   • Prompt fulfillment of my FOIA requests and access to all relevant records, including those currently stored in the system vault.

2.    **Preservation of Deleted Records**
   • A halt to further deletions and immediate action to preserve all records currently stored in the system vault.

3.    **Written Confirmation of Actions Taken**
   • Confirmation of what steps are being taken to **address** these concerns, including the retrieval and preservation of deleted records.

The delays and potential loss of documents are severely impacting my ability to advocate effectively in this matter. I ask for your immediate attention to these concerns and request an acknowledgment of this email and my requests.

I am using the Illinois Freedom of Information Act (FOIA) to request all emails and communications regarding myself, my child, and my child's mother exchanged between officials acting on behalf of the state. FOIA is an essential tool that allows **me to** ensure transparency and hold public entities accountable for their actions.

I am requesting these records to confirm whether officials involved in decisions about my child's education and **wellbeing are acting** in compliance with state and federal laws. By obtaining these communications, I aim to ensure that any actions or discussions about my family are properly documented and transparent.

My request specifically seeks emails and correspondence that mention me, my child, or my child's mother. This includes communications **between teachers,** administrators, school board members, and other representatives of **the school district or state.** This scope is important because it allows me to fully understand how decisions impacting my child have been made and ensures that no critical information is being withheld.


Thank you for your prompt response.

Sincerely,
Jeff Luffman



Jeffrey Luffman
9123187505
6366754864

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Monday, December 9, 2024 9:12:23 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>; mrozycki23@yahoo.com <mrozycki23@yahoo.com>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>; npenz@usatoday.com <npenz@usatoday.com>; newswatch@foxnews.com <newswatch@foxnews.com>; newsmanager@foxnews.com <newsmanager@foxnews.com>; nbcnews.editors@nbcuni.com <nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

I noticed my email font color was somehow changed to white would prevent you from seeing my emails

**Dear School Board Members,**

**I am writing to express my concern regarding the handling of communications through the ParentSquare platform and the district's response to my recent request for these records under the Illinois Freedom of Information Act. Transparency and accountability are critical to maintaining trust between parents and the school district, and I believe the current situation raises significant questions that require immediate attention.**

**In response to my FOIA request, the district has claimed that the communications I requested qualify as student records exempt under the Illinois School Student Records Act. However, it has also been disclosed that certain records were deleted by ParentSquare. This raises several critical concerns:**

**1. Accountability for Record Retention:**
**• As a publicly funded institution, the district is required to retain records in compliance with FOIA and state laws. The deletion of communications, especially after a public records request, undermines the principles of transparency and raises questions about compliance with legal obligations.**

**2. Appropriate Classification of Records:**
**• The classification of these communications as student records under the Illinois School Student Records Act appears questionable. If the communications are administrative or involve general parental engagement, they should not fall under this exemption and must be disclosed under FOIA.**

**3. Public Trust and Oversight:**
**• Deleting records and withholding information erodes public trust. It is critical for the district to demonstrate a commitment to transparency and to provide clear explanations for these actions.**

**I respectfully request a detailed response addressing why certain records were deleted, how the district ensures compliance with state laws governing record retention, and a re-evaluation of the classification of the requested communications. I also urge the district to make every effort to recover any deleted records and ensure future transparency in handling public requests.**

Thank you for your attention to this important matter. I look forward to your prompt response and resolution of these concerns.

If a school board is using Google's Gmail app to recall or delete messages, it may be leveraging features or configurations available within Google Workspace (formerly G Suite). Here's how this could work, along with the legal and technical considerations involved:

**Technical Mechanism**
**1. Google Workspace Admin Privileges:**
• Organizations using Google Workspace can set administrative controls over all email accounts in their domain (e.g., @schooldistrict.org).
• Admins can access, modify, delete, or revoke email permissions within their organization.
**2. Email Recall Feature:**
• Gmail lacks a built-in universal "recall" feature for sent emails (unlike Microsoft Outlook). However, administrators can remove messages from recipients' inboxes within the same domain.
• For external recipients, Gmail's recall options are limited unless specific permissions are in place.
**3. Retention Policy Adjustments:**
• Admins can set or modify email retention policies to auto-delete or retract messages, including those flagged as inappropriate or incorrect.
**4. Vault or Compliance Rules:**
• Google Vault allows organizations to manage, search, and retain communications for legal or compliance purposes. Messages could be selectively deleted to prevent them from being discoverable.

**Legal and Ethical Considerations**
**1. Transparency:**
• Deleting or recalling emails to cover up a false or illegal statement could be seen as obstructing justice or evidence tampering if the deletion occurs during an investigation or litigation.
**2. Public Records:**
• Communications by public officials, including school boards, are often considered public records under laws like the Freedom of Information Act (FOIA) or state-specific sunshine laws.
• Deleting such messages without proper archiving or disclosure could violate public records laws.
**3. E-Discovery and Accountability:**
• During legal proceedings, all relevant communications are subject to e-discovery. If emails were deleted to avoid scrutiny, this could lead to severe legal consequences for the board or individuals involved.

**Possible Motivations**
• **Damage Control:**
• The board might be attempting to mitigate the impact of a statement they believe was false, misleading, or legally compromising.

- **Legal Advice:**
- **Counsel may have advised the board to remove the email to minimize liability, albeit this must be done in accordance with public records laws and retention policies.**
- **Mistaken Understanding:**
- **The board might believe email deletion removes all traces, unaware that backups or legal retention policies might preserve the communications.**

**Investigative Steps**
- **FOIA Requests:**
- **File a request for all emails, including recalled or deleted ones, related to the matter in question.**
- **IT Audit:**
- **Investigate if and how administrative privileges were used to modify or delete emails.**
- **Legal Action:**
- **If this involves public accountability, consider legal action to obtain access to deleted emails and determine if any laws were violated.**

**If you suspect wrongdoing, consulting with a constitutional or civil rights attorney specializing in public accountability or FOIA requests may be necessary to pursue the matter.**

**It is concerning that the signature block included in communications from kahok.org appears to contain an illegal directive to destroy public records, potentially violating the Illinois Freedom of Information Act (FOIA), which ensures openness and transparency in government transactions. Such directives undermine public accountability and violate the principles of transparency mandated by state law. This situation suggests a deliberate attempt to obscure or limit access to public records, which is a direct affront to the integrity of the school district's operations.**

**Additionally, the use of "Kahok" in all kahok.org email communications perpetuates a disparaging reference to the Native American heritage of the Cahokia Mound Builders, who hold significant cultural and historical importance in our area. While this name may have been adopted with the intention of honoring local history, its continued use in this context disregards the cultural sensitivity and concerns raised by Native American communities and advocates. It perpetuates a stereotype rather than promoting an accurate and respectful representation of the Cahokia people's legacy.**

**Furthermore, it is troubling that my records appear to be filed under the Illinois School Student Records Act (ISSRA) rather than being made accessible under FOIA. By disguising public records as confidential student records, the district appears to be circumventing FOIA's transparency requirements. This approach creates a significant barrier to accessing information that should be publicly available, violating the spirit and intent of FOIA.**

I am attaching all communications I received regarding my requests for information on the parent app, which includes correspondence involving me, the child's mother, and the teacher. It is clear from these documents that there are significant discrepancies in how these communications are presented and handled. This inconsistency raises additional concerns about the district's record-keeping practices and whether they are designed to obscure accountability rather than promote transparency.

I respectfully request a thorough review of these practices to ensure compliance with Illinois FOIA, ISSRA, and other relevant statutes. Transparency and openness in public records are critical to maintaining trust and accountability, and any attempt to limit or misclassify records to avoid scrutiny must be addressed immediately. I look forward to a prompt response and a resolution to these concerns.

My experience at Collinsville Community Unit School District #10 raises concerns about fair employment practices, open meeting laws, and potential retaliation. I want to ensure that policies are being implemented in a manner that is transparent, consistent, and compliant with applicable laws.

During my visits to the school, I encountered two kind and professional staff members who demonstrated compassion and understanding. One of these individuals, a relief aid whose name I do not know, provided me with a visitor patch and allowed me entry without requiring an ID, a gesture I perceived as accommodating rather than a violation of policy. On another occasion, on October 31, when my daughter had an earache and confusion over her left and right hand, another staff member helped me discuss this with her in a supportive manner. These actions contributed to a positive and welcoming experience for me and my daughter.

However, during my last visit, I observed one of these individuals being sent home from the school. This raises significant concerns about whether these staff members were wrongly accused or disciplined for their interactions with me and my daughter. If this is the case, it may reflect retaliation or a misunderstanding of their actions, which were clearly aimed at providing a helpful and supportive environment.

Collinsville Community Unit School District #10's policy on visitor identification states that staff members may request identification from individuals on school property and that refusal to provide ID is grounds for removal or denial of access. While this policy is intended to ensure safety, it is crucial that its enforcement does not result in undue disciplinary actions against staff members who exercise discretion and kindness. Clear communication, consistent application of policies, and proper training are essential to avoid situations where staff members feel penalized for reasonable and compassionate actions.

Additionally, I want to address concerns related to the district's hiring practices and compliance with open meeting laws. As a recent applicant for a relief aid position that closed on November 21, I want to ensure that all hiring actions are conducted in an open and transparent manner. Illinois open meeting laws require that public business, including employment decisions, be conducted openly unless explicitly exempt under specific criteria. I request access to any documentation or records, including meeting

minutes, discussing the hiring process for the relief aid position. If no such records exist, this may indicate noncompliance with transparency requirements.

I also want to express concern about any potential retaliation that may arise from my interactions with the school or my advocacy for my rights and my daughter's well-being. Retaliation in any form undermines trust and accountability within the district and may violate state and federal protections against discrimination and retaliation in public employment and services.

I respectfully request a review of the enforcement of visitor policies, the treatment of staff members who interacted with me and my daughter, the transparency of hiring practices, and assurances that retaliation will not be tolerated. Ensuring fairness, accountability, and compliance with all applicable laws is essential for fostering a positive environment for students, parents, and staff alike. I look forward to your response and to working together to address these concerns.

The Washington Redskins, now known as the Washington Commanders, were required to change their name following years of criticism that the term "Redskins" was offensive and perpetuated racial stereotypes about Native Americans. While the name change was not legally mandated by government authorities, it was the result of mounting public pressure, corporate sponsorship boycotts, and social justice movements.

For decades, Native American groups, civil rights organizations, and advocacy groups, such as the National Congress of American Indians (NCAI), criticized the "Redskins" name as a racial slur and called for its removal. In 2020, following the murder of George Floyd and the rise of the Black Lives Matter movement, there was a broader cultural reckoning regarding racial justice and systemic discrimination. Major corporate sponsors, including FedEx, which held naming rights to the team's stadium, as well as Nike, PepsiCo, and others, publicly urged the team to change its name. FedEx even threatened to withdraw its sponsorship if the name was not changed. In addition to sponsor pressure, retailers such as Amazon, Walmart, and Target pulled Washington team merchandise from their shelves, creating economic pressure to reconsider the name. Broader societal awareness about racial and cultural insensitivity amplified calls for the name change. Native American activists argued that the use of derogatory stereotypes as mascots trivialized their cultures and identities.

On July 3, 2020, FedEx formally requested that the team change its name. Nike removed all team merchandise from its website. By July 13, 2020, the team announced it would retire the "Redskins" name and logo, which had been in use since 1933. After a two-year interim period as the "Washington Football Team," the franchise officially unveiled its new name, the Washington Commanders, on February 2, 2022.

Although there was no direct federal or state legal action forcing the name change, the broader cultural and corporate pressures highlight the legal risks organizations face under civil rights laws and anti-discrimination policies. Trademark concerns also played a role. The team's trademark of the "Redskins" name and logo had been challenged repeatedly under the Lanham Act, which prohibits trademarks that may disparage or

bring contempt to individuals or groups. In 2017, the Supreme Court ruled in Matal v. Tam that disparaging trademarks are protected under the First Amendment. However, the social and financial pressures remained significant. Advocates argued that continued use of the name violated the principles of diversity and equity upheld by federal civil rights protections, including Title VI of the Civil Rights Act, which prohibits discrimination in programs receiving federal funds.

The name change of the Washington Redskins set a powerful precedent for other sports teams and organizations to reconsider Native American mascots or names with racial connotations. Teams like the Cleveland Indians (now the Cleveland Guardians) followed suit, while others, like the Kansas City Chiefs and Chicago Blackhawks, faced ongoing scrutiny. In summary, while the Washington Commanders name change was not mandated by law, it reflects the growing societal expectation for organizations to eliminate racially insensitive or discriminatory symbols and align with principles of diversity, equity, and inclusion. This shift underscores the power of advocacy, economic leverage, and public accountability in driving cultural and institutional change.

A peaceful warrior is someone who embodies strength, resilience, and discipline while committing to peace, understanding, and positive action. As a proud graduate of Granite City High School, whose mascot is the Warriors, and an Army retiree with a distinguished military career that included 30 months deployed overseas, I consider myself a peaceful warrior. My experiences in the military have taught me the value of courage, service, and responsibility, while also instilling a deep commitment to fostering harmony and justice in my community.

The Illinois law 430 ILCS 66 - Firearm Concealed Carry Act governs the carrying of concealed firearms by licensed individuals in the state. This law explicitly prohibits the possession of firearms in sensitive areas, such as schools, with limited exceptions for law enforcement and other authorized personnel. However, referencing this statute in a school district's communication to justify restricting my access or implying a connection to firearms ownership or use is unwarranted if there is no evidence or basis to suggest a violation of this law. I do not own any firearms, nor have I ever brought any weapons to school property or engaged in any conduct that would justify referencing the Firearm Concealed Carry Act in any communication regarding me. This reference, if included, is both misleading and intimidating, as it implies a potential threat where none exists. I fully support the Second Amendment and the rights it guarantees to law-abiding citizens. However, as someone who does not own firearms and is a peaceful individual, there is no basis for invoking this statute in relation to me.

As a peaceful warrior, my focus is on advocating for my rights, my child's well-being, and the values of fairness and justice. Invoking 430 ILCS 66 in this context appears to be a misuse of the law and an attempt to create unnecessary fear or suspicion. The Second Amendment is a vital part of our Constitution, and I respect the rights it provides. However, in this instance, the cross-referencing of a firearms statute in matters unrelated to firearms ownership or use is inappropriate and irrelevant. The use of intimidating language or unwarranted legal references in official communication undermines trust and

transparency. I respectfully request that the school district refrain from including
irrelevant statutes such as the Firearm Concealed Carry Act in correspondence regarding
me, as it has no legal or factual basis in this context. Such actions only serve to mislead,
intimidate, and distract from the real issues at hand. My identity as a peaceful warrior,
forged through my education at Granite City High School and my service on the
battlefield, reflects a commitment to peace, transparency, and collaboration to ensure the
best outcomes for my child and the school community.


My daughter shared her experience during a stranger emergency preparedness drill
conducted by the YMCA Y Club in the cafeteria at Renfro Elementary. She told me that
during the drill, she and the other children were instructed to hide in the bathroom. As a
parent, this raises significant concerns about the effectiveness and safety of such a
procedure. While I understand the importance of preparing students for emergencies, the
decision to use a bathroom as a shelter seems misguided and potentially dangerous.

Based on my understanding of Illinois laws, particularly the Illinois School Safety Drill Act
(105 ILCS 128), schools are required to conduct emergency drills in coordination with
local law enforcement and first responders. These drills must follow protocols designed
to maximize student safety and provide clear, actionable steps for emergencies. I
question how hiding in a bathroom aligns with these best practices, as bathrooms are
generally not considered secure locations during an intruder or stranger emergency.
Bathrooms often lack lockable doors or reinforced walls and usually have multiple entry
points, making them far less secure than classrooms or other lockable spaces. If an
intruder were to enter a bathroom, students would have no means of escape, leaving
them extremely vulnerable.

My daughter's experience raises concerns about whether the YMCA staff conducting the
drill were properly trained and whether the procedures align with the school's Emergency
Operations Plan (EOP). I believe it is critical to ensure that after-school programs like the Y
Club adhere to the same safety protocols as the school, especially when they are
operating on school property and are responsible for the safety of children.

I want to better understand the rationale behind this decision and whether it aligns with
state-mandated emergency preparedness requirements. To that end, I will be submitting a
Freedom of Information Act (FOIA) request to obtain all documentation regarding the
Emergency Operations Plan, the specific procedures used during this drill, and any
agreements between the school and the YMCA regarding emergency preparedness. If no
such documentation exists, I will provide any records I have that detail my concerns
about this process.

As a parent, I find it deeply troubling that my child was placed in what appears to be a
vulnerable position during a drill designed to protect her. Bathrooms are not designed for
security, and directing children to shelter there during an intruder situation seems
inconsistent with safety best practices. I am requesting that the school administration and
YMCA leadership review these procedures with local law enforcement and emergency
management experts to ensure that drills prioritize student safety and reflect current best
practices. Moving forward, I strongly urge the school and the Y Club to revise their

emergency protocols to direct children to more secure locations, such as lockable classrooms or other reinforced spaces.

This situation highlights the need for transparency, accountability, and adherence to state and federal safety standards in all emergency preparedness activities. I am committed to ensuring that my child and others are protected by procedures that genuinely enhance their safety rather than expose them to unnecessary risk. I look forward to receiving the requested documentation and working collaboratively with the school and YMCA to address these concerns.

The Illinois School Code and local school district policies, such as L 19.Q, outline the roles, responsibilities, and expectations for individuals engaging with schools. These policies aim to maintain a safe and orderly environment, but they must always align with constitutional protections, particularly those granted under the First Amendment. The First Amendment is critical in this situation because it protects your rights to freedom of speech, assembly, and the ability to advocate for your child. These rights cannot be arbitrarily restricted by school policies or decisions made without proper justification.

The First Amendment ensures that individuals have the right to express themselves and engage in public discourse, even when that discourse challenges authority. As a parent, your advocacy for your child's education and participation in school-related activities is a form of protected speech. Any attempt to restrict your access to school property or events without clear, substantiated evidence of misconduct raises serious concerns about the violation of your First Amendment rights.

In the context of schools, the First Amendment is particularly important because public schools are government entities. This means that decisions they make must respect the constitutional rights of all individuals, including parents. If the school district is restricting your access to your child's school or participation in their education, they must demonstrate that the restriction is necessary, narrowly tailored, and based on compelling evidence. Arbitrary or overly broad restrictions are not permissible and violate the First Amendment's guarantee of free expression and assembly.

Additionally, the First Amendment protects against retaliation for exercising your rights. If the school district's actions to restrict your access are in response to your advocacy for your child or your criticism of school policies, this constitutes a retaliatory action that is explicitly prohibited under the First Amendment. Parents have the right to question and challenge school decisions without fear of losing access to their child's education or being subjected to punitive measures.

In your case, the importance of the First Amendment cannot be overstated. It ensures that you have the right to communicate with school staff, participate in school activities, and advocate for your child's best interests. These rights are fundamental to maintaining a meaningful relationship with your child and supporting their education. Any actions by the school district that restrict your access without evidence, due process, or adherence to constitutional standards are not only unjust but also potentially unlawful. The First Amendment serves as a safeguard against such overreach, ensuring that parents and

community members can continue to engage with public institutions without undue interference or discrimination.

The Illinois Criminal Code section 720 ILCS 5/11-9.3 addresses prohibited conduct near or on school property, particularly in relation to individuals classified as sex offenders or those who have engaged in conduct deemed harmful to minors. It restricts access to school property for individuals who pose a potential danger to the safety and well-being of children. This law is often cited to restrict access to school grounds or events, but its application must comply with constitutional protections, including due process and civil rights, at local, state, and federal levels.

Restrictions under this law must be specific and substantiated. The law applies to individuals with a criminal conviction or substantiated evidence of conduct harmful to minors. If the school district is using this statute to restrict my access, they must present concrete evidence that my presence poses a threat to the safety of children on school grounds. A mere allegation, suspicion, or generalized concern is insufficient to justify invoking this law. If no criminal conviction or documented misconduct exists, citing this law to limit my access would be an overreach and could violate my rights.

The Fourteenth Amendment to the U.S. Constitution prohibits government entities, including schools, from imposing restrictions without fair procedures. Before restricting my access under 720 ILCS 5/11-9.3, the school district must notify me of the specific reasons for the restriction, provide an opportunity to challenge the allegations and present my case, and ensure an impartial decision-making process. If these steps were not followed, the restriction violates my due process rights.

I want to clearly state that I have not committed any crimes. If there are allegations to the contrary, I respectfully request that I be informed immediately so I can turn myself in and address any such claims through the proper legal channels. The allegation or implication that I am a sex offender is both disturbing and unwarranted. These accusations, if being made without evidence, are not only harmful but also deeply unjustified.

Federal protections under the Civil Rights Act, 42 U.S.C. §1983, safeguard against arbitrary or discriminatory actions by public officials, including those at the school district. If the school district is restricting my access based on false assumptions, bias, or unsubstantiated claims, this could constitute a violation of my civil rights under federal law. The Illinois Human Rights Act further prohibits discrimination in access to public accommodations, including schools. Arbitrary restrictions that prevent me from engaging in my child's education could violate these protections.

Illinois law recognizes the fundamental right of parents to access their children and participate in their education unless a court order explicitly restricts this right. Invoking 720 ILCS 5/11-9.3 improperly to limit my access undermines my parental rights without legal justification. Restricting my access to my child's school without evidence or due process interferes with my ability to be an active and engaged parent, which is critical to my child's emotional and educational development.

Local and state laws, such as the Illinois School Code, mandate that school policies be applied consistently and in alignment with state law. Arbitrary restrictions that are not grounded in a reasonable application of the law conflict with this mandate. Federal laws, including the Fourteenth Amendment, prevent arbitrary deprivation of rights without notice and a fair hearing.

If there is no criminal background or documented risk, citing 720 ILCS 5/11-9.3 to restrict my access is inappropriate and a misuse of the law. Arbitrary access restrictions that rely on unproven allegations of harmful conduct are discriminatory and violate my rights as a parent and a citizen. Restricting my ability to access my child's school impacts my ability to engage meaningfully in their education, attend parent-teacher conferences, and support their academic and emotional growth. Without proper justification, such actions harm both my parental rights and my child's overall well-being.

Restricting my access also has broader implications. Denying me access without justification diminishes my ability to fulfill my responsibilities as a parent and actively contribute to my child's education. It also obstructs my ability to secure stable employment or volunteer in community initiatives, further compounding the harm caused by these unwarranted restrictions. If the school district has legitimate concerns, they must provide evidence and ensure that due process is upheld. These limitations should be reconsidered to allow me to fully exercise my parental rights and responsibilities.

If the school district is using Policy 6:120 - Education of Children with Disabilities as part of its justification for limiting your access, there are significant issues with this cross-reference, particularly since your child is seven years old and has not been diagnosed with a disability. Here's an analysis of why referencing this policy is problematic:
1. Policy 6:120 - Education of Children with Disabilities Overview:
• This policy pertains to the district's obligation to provide educational services to children with disabilities under state and federal laws, such as the Individuals with Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act.
• It includes provisions for Individualized Education Programs (IEPs), accommodations, and support services for children with diagnosed disabilities.
2. Irrelevance to Your Child:
• Your child has never been diagnosed with a disability, and therefore, the policy does not apply to their educational situation.
• Invoking this policy in matters related to your access is inappropriate unless the school district is specifically addressing accommodations or educational programming for children with disabilities.
• The use of this policy appears to be an attempt to justify actions that do not directly relate to your child's circumstances.
3. Potential Misuse of the Policy:
• If the school district is citing this policy to imply that your child may have a disability, it is problematic for several reasons:
• No Evidence: Without a formal evaluation or diagnosis, the school has no basis to classify or treat your child as having a disability.

• **Legal Implications:** Suggesting your child has a disability without due process or proper evaluation violates both IDEA and Section 504, which protect against misclassification.
• If the policy is being used as a broad justification for restricting your access, it further highlights procedural and ethical flaws in the district's approach.

**4. Discrepancy with Parental Rights:**
• The Illinois School Code and Parental Involvement in Education Policy support your right to be actively involved in your child's education, particularly when there is no evidence or record of your child having a disability.
• Invoking an irrelevant policy undermines transparency and suggests the district may lack valid grounds for its actions. This misuse could be viewed as an attempt to sidestep accountability.

**5. Impact on Your Child's Education:**
• Using this policy to justify restrictions on your access to the school has a direct negative impact on your ability to support and advocate for your child. Parental involvement is critical to a child's academic and emotional development, and arbitrarily limiting access interferes with your ability to fulfill these responsibilities.
• Without any connection to your child's actual needs or circumstances, the district's reliance on this policy raises serious questions about its decision-making process.

**Legal and Procedural Concerns:**
• **Individuals with Disabilities Education Act (IDEA):**
• The IDEA requires that any classification of a child as having a disability must be based on formal evaluations and parental consent. Misapplying this policy contradicts the procedural safeguards outlined in the Act.
• **Illinois School Code:**
• The Illinois School Code mandates that school policies be applied consistently and in alignment with state law. Using Policy 6:120 in this context appears inconsistent and arbitrary.
• **Due Process:**
• If the school district is restricting your access without clear and relevant justification, it may be violating your constitutional right to due process under the Fourteenth Amendment.

**Conclusion:**

The cross-reference to Policy 6:120 is not relevant to your child's situation and raises significant concerns about the school district's reasoning and transparency. Without a diagnosis or evidence of a disability, the district's reliance on this policy is baseless and appears to be a misuse of their governance framework. This misuse infringes on your parental rights, impacts your ability to support your child's education, and raises broader concerns about the district's adherence to state and federal laws. You should request clarification on why this policy is being referenced and insist on a formal review of the district's actions.

Since Monday, I have faced significant restrictions on accessing key areas and activities that are essential to my role as a parent and community member. These limitations have negatively impacted my ability to engage meaningfully in important responsibilities and opportunities:

1. Access to School Grounds and Involvement in My Child's Education:
• I have been restricted from accessing school property, which has directly affected my ability to participate in my child's educational activities. This limitation hinders my ability to stay informed about my child's progress, advocate for their needs, and foster a strong parent-school relationship.
• Such restrictions contradict Illinois parental involvement policies, which encourage active parental participation in education. They also undermine federal standards under the Every Student Succeeds Act, which mandates schools to promote parent engagement as a means of supporting student success.

2. Volunteering Opportunities:
• I have been unable to participate in critical volunteer roles, including my involvement with the Madison County Veterans Court, where I serve as a mentor and advocate for fellow veterans. This role is vital to supporting veterans' rehabilitation and reintegration efforts, and my absence affects both the program and the individuals I mentor.
• Additionally, I have been limited in my ability to contribute to emergency response efforts in Collinsville, Illinois. This restriction prevents me from supporting my community in crucial ways, particularly in disaster preparedness and response initiatives.

3. Employment Opportunities:
• These restrictions have further compounded my inability to secure meaningful employment, such as the Relief Aid position at Renfro Elementary School, for which the application process closed on November 21, 2024. My exclusion from school property undermines my ability to pursue employment opportunities within the district, which are vital to my financial stability and professional growth.

4. Broader Implications:
• The denial of access impacts my rights as a parent and a citizen. It diminishes my ability to engage with my child in a meaningful way, contribute to my community, and secure stable employment. This creates unnecessary barriers to fulfilling my responsibilities and participating fully in civic and familial roles.

These restrictions are not only harmful but also raise legal and ethical concerns. Limiting my access without clear, substantiated justification contradicts state and federal laws designed to protect parental rights, promote transparency, and ensure due process. I respectfully request that these limitations be reviewed and reconsidered to allow me to resume my roles as a parent, volunteer, and contributing member of the community.

The Pro-Children Act of 1994 (20 U.S.C. § 7181) and related federal and state laws highlight the balance between maintaining safe educational environments and ensuring parental rights to participate in their child's education. Here's how these laws apply for and against your situation regarding access to your child, particularly in the context of Illinois parental interference laws and federal laws governing access to public buildings.

The Pro-Children Act aims to ensure a safe and healthy environment in schools by prohibiting smoking or using tobacco products in educational facilities that receive

federal funding. While it does not directly address parental access to schools, its overarching goal is to safeguard children's well-being in public educational settings.

The Act underscores the need for schools to foster environments where children's needs—both physical and emotional—are prioritized. Parental involvement in education is critical to emotional and academic development. Denying access without clear, lawful justification could be viewed as contradictory to the Act's intent to support children's holistic well-being. Schools might invoke safety concerns, including maintaining a secure environment, to justify restrictions on certain individuals' access. However, this argument must be substantiated and cannot rely on arbitrary or unproven claims.

Under Illinois law, particularly the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/602.3) and Interference with Parental Rights (720 ILCS 5/10-5.5), parents have the right to reasonable access to their children unless there is a court order explicitly limiting this right. Interfering with a parent's ability to access or interact with their child without proper justification is a violation of Illinois law. By restricting your ability to access your child's school without evidence of misconduct or a court order, the district's actions could be interpreted as interference with your parental rights. If there are no safety or legal reasons substantiating the restriction, the school district may be unlawfully interfering with your rights to participate in your child's education, as protected under Illinois and federal law.

The Americans with Disabilities Act (ADA) prohibits discrimination in access to public buildings, including schools, for individuals with disabilities. If your access to the school is restricted based on a disability or unsubstantiated claims of behavior, this could be a violation of your federal rights under the ADA. Under the Fourteenth Amendment, public entities, including school districts, cannot deny access to public facilities without due process. If the school district restricted your access arbitrarily or without providing a fair hearing or proper notice, it violates your constitutional rights. Public schools are subject to FOIA, requiring transparency in their policies and decisions. If the school's decision to limit your access was discussed or documented in school board meetings, you have the right to request those records to determine if proper procedures were followed.

Parental involvement is a key component of education policy. Illinois School Code (105 ILCS 5/10-20) encourages schools to foster parent engagement in educational activities. Every Student Succeeds Act (ESSA) mandates schools receiving federal funding to promote parent involvement as a means to improve student outcomes. If the school district has a policy advocating for parental involvement yet limits your access without due cause, they are acting inconsistently with both state and federal expectations. Limiting your access to school events, meetings, or your child's educational environment contradicts the widely recognized benefits of parental involvement in education.

Restricting your access prevents you from engaging in critical aspects of your child's education, which could result in emotional harm and a diminished relationship with your child. Furthermore, it obstructs your ability to support and advocate for your child's educational success. These restrictions, if unjustified, undermine your parental rights and potentially harm your child's overall development.

**Pursuant to the Illinois Freedom of Information Act 5 ILCS 140, I am requesting access to the following records related to the recent hiring process for the Relief Aid position at Renfro Elementary School, Collinsville School District #10, which closed on November 21, 2024. Meeting minutes, recordings, or notes from any open or closed session discussions related to the Relief Aid position. Records of applications received, interview evaluations, and criteria used for selection. Records of votes or decisions made by the school board regarding the hiring process.**

**It is important to note that federal laws prohibit discrimination against disabled citizens. Under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, public entities, including school districts, are prohibited from discriminating against qualified individuals with disabilities in employment or access to public services. Additionally, federal law prohibits discrimination based on unsubstantiated legal circumstances. Decisions regarding employment must be based on verifiable qualifications and evidence rather than speculative or unsupported claims about an individual's character or actions.**

**If any part of this request is denied, please cite the specific legal exemption under FOIA and provide a detailed explanation. Additionally, I request that any redacted material be justified with specific references to the applicable exemptions. Please let me know if there are any fees associated with this request or if further clarification is needed. I look forward to your response within the statutory time frame of five business days.**

ant to share my research regarding the law cited by the district so that we can all learn and grow from this experience

**The case Nuding v. Cerro Gordo Community Unit School District, 730 N.E.2d 96 (2000), provides important precedent regarding procedural due process in the context of school districts restricting access to school property. Below are arguments for and against using this legal reference in a case or discussion.**

**Arguments For Using the Case as a Legal Reference: Procedural Due Process Precedent. The court in Nuding held that a school district must provide procedural due process before denying an individual access to school property. Key Principle: Before imposing restrictions, the district must notify the individual of the alleged misconduct and provide an opportunity for the individual to contest the allegations at a hearing. Application: If a school district restricts access without adhering to these requirements, it violates procedural due process protections under the 14th Amendment. Accountability for Public Entities. Nuding reinforces that school districts, as public bodies, cannot make arbitrary or capricious decisions without transparency or justification. This precedent ensures public entities respect individual rights, particularly when restricting access to public property like schools. Scope of Authority. The ruling limits the discretionary power of school officials. It ensures that any decision restricting access is grounded in factual evidence, legitimate safety concerns, or violations of policy rather than subjective opinions or biases. Equal Application of Policies. The case emphasizes that policies affecting access must be consistently applied. If the school district discriminates or enforces policies unevenly, Nuding provides a strong basis for challenging such actions.**

**Arguments Against Using the Case as a Legal Reference: Fact-Specific Nature of the Case.** The Nuding decision arose from specific circumstances that may differ significantly from other cases. For example, in Nuding, the restriction was based on alleged misconduct that occurred on school property, which might not align with all scenarios where access is restricted. Counterpoint: If the facts of the new case differ, a court may distinguish the case and limit its applicability. **Districts' Need for Safety.** Opponents might argue that school districts have a compelling interest in ensuring safety and order, which may justify immediate restrictions on access without a full due process hearing. Counterpoint: Schools may assert that the need to protect students and staff outweighs the procedural requirements, particularly in cases involving perceived threats. **Federal vs. State Law Distinctions.** While Nuding establishes a due process standard under state law, opposing parties may argue that federal law or other precedents provide different interpretations of what constitutes "reasonable" due process in school settings. **Burden on School Districts.** Requiring schools to conduct hearings for every access restriction could impose administrative burdens, especially in cases involving non-parents or individuals without ongoing interactions with the school community. Counterpoint: Schools may claim they need flexibility to act quickly in maintaining a safe environment, even at the cost of temporarily restricting access before formal due process procedures occur.

The Nuding case is a strong reference for challenging arbitrary or unfair restrictions imposed by a school district, particularly where procedural due process has not been followed. However, its usefulness may be limited if the facts of the case are significantly different or if the district successfully argues that immediate action was necessary to protect safety and order. Using Nuding effectively will depend on demonstrating that the facts of the current situation align closely with the procedural deficiencies highlighted in the case and countering claims that due process should be secondary to safety concerns.

am writing to raise concerns regarding the enforcement of policies related to cannabis use and testing, particularly in light of Illinois law and the challenges of determining impairment or intoxication.

Unlike alcohol, where clear legal thresholds (e.g., a BAC of 0.08%) exist to measure impairment, Illinois law does not establish a legal limit for cannabis intoxication in non-driving contexts. Current testing methods detect the presence of THC metabolites, which can remain in the system for 15 to 30 days or longer, depending on frequency of use. These metabolites are inactive and do not indicate recent use or current impairment, making it impossible to draw definitive conclusions about intoxication solely from a positive test result.

Illinois law permits the lawful use of cannabis for both recreational and medical purposes. Under the Illinois Cannabis Regulation and Tax Act (410 ILCS 705), adults 21 and older

can legally purchase and consume cannabis within established possession limits. The Compassionate Use of Medical Cannabis Program Act (410 ILCS 130) protects registered medical cannabis patients with qualifying conditions, granting them the right to use cannabis as part of their treatment. Employers and organizations are prohibited from discriminating against individuals based on their lawful use of cannabis outside of work, provided it does not affect their job performance or safety.

The presence of THC in the bloodstream or urine does not reliably indicate intoxication or impairment. THC levels vary widely among individuals and depend on factors such as metabolism, frequency of use, and method of consumption. Unlike alcohol, there is no scientific consensus on a specific THC level that correlates with impairment. A regular medical cannabis patient may have detectable THC levels long after their last use, even when they are no longer impaired. Tests such as urine or blood screens only detect past use, not active intoxication, creating the potential for unjust penalties for lawful cannabis users.

Policies that enforce zero-tolerance or blanket bans on cannabis use for employees or volunteers conflict with Illinois law in the following ways. Such policies may discriminate against lawful cannabis users, including medical patients, even when their use occurs outside of work hours and does not impact their job performance. Penalizing individuals for a positive cannabis test without evidence of intoxication or on-site use contradicts the protections established by the Cannabis Regulation and Tax Act and the Compassionate Use of Medical Cannabis Program Act.

To align with Illinois law and avoid potential conflicts, organizations should revise policies to focus on workplace impairment rather than residual cannabis levels in the system. They should implement objective standards for determining intoxication, such as behavioral observations or performance evaluations, rather than relying solely on drug test results. They should also provide reasonable accommodations for registered medical cannabis patients, as required under Illinois law.

The lawful use of cannabis and the limitations of current testing methods necessitate a more nuanced approach to cannabis policies. Without clear legal thresholds for THC impairment and reliable methods to determine intoxication, policies should focus on job performance and safety rather than penalizing individuals for lawful, off-duty use of cannabis.

The law that applies to a school board's authority to investigate criminal activity during a special meeting and its due process obligations includes several key statutes and legal principles. Here's a breakdown of the relevant laws and how they interact with school board activities, particularly in situations where criminal allegations or investigations are involved:

1. Illinois Open Meetings Act (OMA)
• Citation: 5 ILCS 120
• Relevance:

• The OMA ensures transparency in school board meetings and requires that discussions, especially those involving public matters like criminal allegations, be conducted openly unless an exception applies.

• Exception: A school board may hold closed (executive) sessions to discuss specific matters, including:

• Pending or potential litigation (5 ILCS 120/2(c)(11)).

• The appointment, employment, or dismissal of personnel (5 ILCS 120/2(c)(1)).

• Student disciplinary cases (5 ILCS 120/2(c)(9)).

• Key Point: If a school board holds a special meeting to discuss criminal activity, it must provide clear notice and meet OMA requirements unless it qualifies for a closed session under the exceptions. Failure to follow OMA could invalidate decisions or lead to legal challenges.

## 2. Illinois School Code

• Citation: 105 ILCS 5/10-20.5

• Relevance:

• Grants school boards the authority to adopt policies for maintaining order, discipline, and safety within schools.

• Key Point: While school boards can investigate allegations of misconduct or safety concerns, their authority is limited to policy enforcement and disciplinary actions, not criminal investigations. Criminal investigations fall under law enforcement jurisdiction.

## 3. Procedural Due Process Requirements

• Legal Principle: Derived from the 14th Amendment of the U.S. Constitution.

• Relevance:

• Procedural due process ensures fair treatment when the school board takes actions affecting individual rights, such as banning someone from school property or disciplining students or staff.

• Requirements:

• Notice of the allegations or proceedings.

• Opportunity to respond to the allegations (e.g., a hearing).

• Neutral decision-makers.

• Key Point: If a school board quotes due process as part of their justification for a meeting, they must provide those due process protections to individuals affected by their decisions. Otherwise, their actions could be challenged as unconstitutional.

## 4. Criminal Code of Illinois

• Citation: 720 ILCS 5

• Relevance:

• Governs actual criminal investigations, which are the responsibility of law enforcement agencies—not school boards.

• If the school board attempts to conduct its own investigation into criminal matters, it may overstep its legal authority unless collaborating with law enforcement.

• Key Point: The school board should refer suspected criminal activity to law enforcement. Acting beyond their authority could violate state law or lead to improper handling of evidence.

## 5. Governmental Immunity

• **Citation: Illinois Local Governmental and Governmental Employees Tort Immunity Act
(745 ILCS 10/2-201)**
• **Relevance:**
• **Provides immunity to school board members and employees for discretionary acts
performed in good faith as part of their official duties.**
• **Key Point: While school boards are protected for certain discretionary actions, they are
not immune if their actions violate state laws (e.g., due process requirements) or federal
constitutional rights.**

**6. Federal Civil Rights Laws**
• **Citation: 42 U.S.C. § 1983**
• **Relevance:**
• **Allows individuals to sue state actors, including school boards, for violations of
constitutional rights (e.g., due process or equal protection).**
• **Key Point: If the school board's actions during a special meeting infringe on your rights
(e.g., failure to follow due process, arbitrary actions), you can file a civil rights lawsuit.**

**7. School Board's Limitations**
• **School boards can:**
• **Investigate policy violations (e.g., misconduct of students or staff).**
• **Refer potential criminal activity to law enforcement.**
• **Hold disciplinary hearings following due process requirements.**
• **School boards cannot:**
• **Serve as law enforcement agencies.**
• **Conduct independent criminal investigations.**
• **Penalize individuals without providing due process.**

**Application to Your Situation**
• **If the school board held a special meeting to discuss criminal activity:**
• **Was the meeting properly noticed and aligned with the Illinois Open Meetings Act?**
• **Were they attempting to act beyond their authority (e.g., conducting a criminal
investigation)?**
• **Did they provide procedural due process if the meeting affected your rights?**
• **Were their actions consistent with their role as a policymaking body, not a law
enforcement entity?**
• **If due process was mentioned but not afforded (e.g., lack of proper notice, no
opportunity to respond), their actions could be challenged under state and federal laws.**

**Let me know if you'd like assistance drafting a formal response or preparing for further
action.**

Jeff Luffman
Captain, US Army (Retired)
B.S. Health and Physical Education
Cell 6366754864

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Date:** Monday, December 9, 2024 at 07:58
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>, Lauren Bonner
<lauren_bonner@durbin.senate.gov>, Public Access <Public.Access@ilag.gov>,
tony@millerkinglaw.com <tony@millerkinglaw.com>, publicaccess@ilag.gov
<publicaccess@ilag.gov>, Laura Bauer <lbauer@cusd.kahoks.org>, Brad Skertich
<bskertich@cusd.kahoks.org>, Mark Foley <mfoley@cusd.kahoks.org>, Frank Leffler
<fleffler@cusd.kahoks.org>, Susan Frechman <sfrechma@cusd.kahoks.org>, Shelia Schneider
<shelia@thekaufmanfund.org>, Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>, Maryville
Online <gradadmissions@online.maryville.edu>, mrozycki23@yahoo.com
<mrozycki23@yahoo.com>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>, npenz@usatoday.com
<npenz@usatoday.com>, newswatch@foxnews.com <newswatch@foxnews.com>,
newsmanager@foxnews.com <newsmanager@foxnews.com>, nbcnews.editors@nbcuni.com
<nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

**Dear School Board Members,**

**I am writing to express my concern regarding the handling of communications through the
ParentSquare platform and the district's response to my recent request for these records under
the Illinois Freedom of Information Act. Transparency and accountability are critical to
maintaining trust between parents and the school district, and I believe the current situation
raises significant questions that require immediate attention.**

**In response to my FOIA request, the district has claimed that the communications I requested
qualify as student records exempt under the Illinois School Student Records Act. However, it
has also been disclosed that certain records were deleted by ParentSquare. This raises several
critical concerns:**
**1. Accountability for Record Retention:**

- As a publicly funded institution, the district is required to retain records in compliance with FOIA and state laws. The deletion of communications, especially after a public records request, undermines the principles of transparency and raises questions about compliance with legal obligations.

2. Appropriate Classification of Records:

- The classification of these communications as student records under the Illinois School Student Records Act appears questionable. If the communications are administrative or involve general parental engagement, they should not fall under this exemption and must be disclosed under FOIA.

3. Public Trust and Oversight:

- Deleting records and withholding information erodes public trust. It is critical for the district to demonstrate a commitment to transparency and to provide clear explanations for these actions.

I respectfully request a detailed response addressing why certain records were deleted, how the district ensures compliance with state laws governing record retention, and a re-evaluation of the classification of the requested communications. I also urge the district to make every effort to recover any deleted records and ensure future transparency in handling public requests.

Thank you for your attention to this important matter. I look forward to your prompt response and resolution of these concerns.

Sincerely,
Jeff Luffman


Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Monday, December 9, 2024 6:28:24 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>; mrozycki23@yahoo.com <mrozycki23@yahoo.com>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>; npenz@usatoday.com <npenz@usatoday.com>; newswatch@foxnews.com <newswatch@foxnews.com>; newsmanager@foxnews.com <newsmanager@foxnews.com>; nbcnews.editors@nbcuni.com

<nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

Anyone wanna help me soon because there's timelines associated with the information and
kahoks.org g suite domain

**To substantiate that emails were rescinded or deleted within the kahok.org domain using
Google Workspace's Gmail, you can utilize the platform's administrative tools to access detailed
email activity logs. Here's how to proceed:**

**1. Email Log Search (ELS):**
**Google Workspace administrators have access to the Email Log Search feature, which allows
them to trace emails sent and received within their domain. This tool provides information such
as delivery status, timestamps, and recipient details.**
**• Accessing ELS:**
**• Sign in to the Google Admin console using administrator credentials.**
**• Navigate to Reporting > Email Log Search.**
**• Specify the date range and any relevant search criteria (e.g., sender or recipient email
     addresses).**
**• Review the search results to identify the status of specific emails.**

**ELS retains data for 30 days, so timely access is crucial.**

**2. Gmail Log Events via the Security Investigation Tool:**
**For more granular details, including actions like message deletions, the Security Investigation
Tool can be employed. This tool provides insights into various user actions within Gmail.**
**• Using the Security Investigation Tool:**
**• In the Admin console, go to Security > Security Center > Investigation Tool.**
**• Select Gmail log events as the data source.**
**• Add conditions to filter events, such as specifying the email address or action type (e.g.,
     "MESSAGE_DELETED").**
**• Execute the search to view relevant log entries.**

**This tool is available in specific Google Workspace editions, such as Enterprise Plus and
Education Plus.**

**3. Admin Audit Logs:**
**To monitor administrative actions, including email deletions performed by admins, the Admin
Audit Logs can be consulted.**
**• Accessing Admin Audit Logs:**
**• In the Admin console, navigate to Reporting > Audit and Investigation > Admin Log Events.**
**• Filter the logs by event type, date range, or admin account to pinpoint specific actions.**

**These logs provide a record of administrative activities within the domain.**

**4. Google Vault (if enabled):**
**If Google Vault is active for the domain, it serves as an eDiscovery and retention tool, archiving
emails even after deletion from user inboxes.**
**• Using Google Vault:**

- **Access Google Vault at <u>vault.google.com</u>.**
- **Conduct searches for specific emails using criteria like sender, recipient, or date range.**
- **Review the archived emails to verify their existence and any deletion actions.**

**Google Vault ensures that emails are retained according to the organization's retention policies, facilitating retrieval even after deletion from Gmail.**

**Steps to Take:**
- **Coordinate with Domain Administrators:**
**Engage with the administrators of the kahok.org domain to request access to the aforementioned tools or to have them perform the searches on your behalf.**
- **Legal Considerations:**
**If the deletion of emails pertains to legal matters or potential misconduct, consult with legal counsel to determine the appropriate course of action, which may include formal requests for information or legal discovery processes.**

**By leveraging these tools, you can gather evidence of email rescindments or deletions within the Google Workspace environment of the kahok.org domain.**

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Monday, December 9, 2024 5:55:57 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>; mrozycki23@yahoo.com <mrozycki23@yahoo.com>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>; npenz@usatoday.com <npenz@usatoday.com>; newswatch@foxnews.com <newswatch@foxnews.com>; newsmanager@foxnews.com <newsmanager@foxnews.com>; nbcnews.editors@nbcuni.com <nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

**If a school board is using Google's Gmail app to recall or delete messages, it may be leveraging features or configurations available within Google Workspace (formerly G Suite). Here's how this could work, along with the legal and technical considerations involved:**

**Technical Mechanism**
**1. Google Workspace Admin Privileges:**

- **Organizations using Google Workspace can set administrative controls over all email accounts in their domain (e.g., @schooldistrict.org).**
- **Admins can access, modify, delete, or revoke email permissions within their organization.**

**2. Email Recall Feature:**

- **Gmail lacks a built-in universal "recall" feature for sent emails (unlike Microsoft Outlook). However, administrators can remove messages from recipients' inboxes within the same domain.**
- **For external recipients, Gmail's recall options are limited unless specific permissions are in place.**

**3. Retention Policy Adjustments:**

- **Admins can set or modify email retention policies to auto-delete or retract messages, including those flagged as inappropriate or incorrect.**

**4. Vault or Compliance Rules:**

- **Google Vault allows organizations to manage, search, and retain communications for legal or compliance purposes. Messages could be selectively deleted to prevent them from being discoverable.**

**Legal and Ethical Considerations**

**1. Transparency:**

- **Deleting or recalling emails to cover up a false or illegal statement could be seen as obstructing justice or evidence tampering if the deletion occurs during an investigation or litigation.**

**2. Public Records:**

- **Communications by public officials, including school boards, are often considered public records under laws like the Freedom of Information Act (FOIA) or state-specific sunshine laws.**
- **Deleting such messages without proper archiving or disclosure could violate public records laws.**

**3. E-Discovery and Accountability:**

- **During legal proceedings, all relevant communications are subject to e-discovery. If emails were deleted to avoid scrutiny, this could lead to severe legal consequences for the board or individuals involved.**

**Possible Motivations**

- **Damage Control:**
- **The board might be attempting to mitigate the impact of a statement they believe was false, misleading, or legally compromising.**
- **Legal Advice:**
- **Counsel may have advised the board to remove the email to minimize liability, albeit this must be done in accordance with public records laws and retention policies.**
- **Mistaken Understanding:**
- **The board might believe email deletion removes all traces, unaware that backups or legal retention policies might preserve the communications.**

**Investigative Steps**

- **FOIA Requests:**
- **File a request for all emails, including recalled or deleted ones, related to the matter in question.**
- **IT Audit:**

- **Investigate if and how administrative privileges were used to modify or delete emails.**
- **Legal Action:**
- **If this involves public accountability, consider legal action to obtain access to deleted emails and determine if any laws were violated.**

**If you suspect wrongdoing, consulting with a constitutional or civil rights attorney specializing in public accountability or FOIA requests may be necessary to pursue the matter.**

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Monday, December 9, 2024 4:37:33 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>; mrozycki23@yahoo.com <mrozycki23@yahoo.com>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>; npenz@usatoday.com <npenz@usatoday.com>; newswatch@foxnews.com <newswatch@foxnews.com>; newsmanager@foxnews.com <newsmanager@foxnews.com>; nbcnews.editors@nbcuni.com <nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

Good morning. The document provided by the district FOIA officer, titled Luffman 12.6.24 response to my FOIA regarding the school's communication with my child's mother in the Parent Square app, states that the last communication was from 10-3-24.

I need all of the communications with my child's mother.

I see in the communication that there was an open meeting that Mrs Rader notified Mom of, but I did not receive notice.

You can see that in my last email I asked for clarification regarding the FOIA request and have yet to receive a response.

The Parent Square communication by that I requested under the FOIA and provided under ISSRA appears to be screen shots of my conversation on parent square with my child's mother and teacher. Public record includes public records include chats and texts by government officials on their private cell phone.

Please allow me to direct your attention to the illegal statement on the last page directing citizens to destroy public records and call to collude with whoever answers the phone at 6183466350 four times. I suspect they have deleted even emails and that's why the formatting has the statement over and over and over and over.

In the provided communication between mom and Mrs. Rader is is evident mom and dad are not being treated. My daughter has been sick for several months and personal phone conversations have taken place. Notice how accommodating and helpful she is to mom even though she realized mom isn't keeping up with our daughter's homework and health. I am providing a screenshot Ms. Rozycki sent me that capture communication not shared with me that lets me know that the public record is not complete

I added Ms Rozycki to the email
Jeff Luffman
Captain, US Army (Retired)
B.S. Health and Physical Education
B.S. Public Policy
M.S. Public Policy
Cell 6366754864

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Date:** Sunday, December 8, 2024 at 07:17
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>, Lauren Bonner
<lauren_bonner@durbin.senate.gov>, Public Access <Public.Access@ilag.gov>,
tony@millerkinglaw.com <tony@millerkinglaw.com>, publicaccess@ilag.gov
<publicaccess@ilag.gov>, Laura Bauer <lbauer@cusd.kahoks.org>, Brad Skertich
<bskertich@cusd.kahoks.org>, Mark Foley <mfoley@cusd.kahoks.org>, Frank Leffler
<fleffler@cusd.kahoks.org>, Susan Frechman <sfrechma@cusd.kahoks.org>, Shelia Schneider
<shelia@thekaufmanfund.org>, Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>, Maryville
Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>, npenz@usatoday.com
<npenz@usatoday.com>, newswatch@foxnews.com <newswatch@foxnews.com>,
newsmanager@foxnews.com <newsmanager@foxnews.com>, nbcnews.editors@nbcuni.com
<nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 7:16:17 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner
<lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>;

tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov
<publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich
<bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler
<fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider
<shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville
Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>; npenz@usatoday.com
<npenz@usatoday.com>; newswatch@foxnews.com <newswatch@foxnews.com>;
newsmanager@foxnews.com <newsmanager@foxnews.com>; nbcnews.editors@nbcuni.com
<nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

It is concerning that the signature block included in communications from kahok.org appears to
contain an illegal directive to destroy public records, potentially violating the Illinois Freedom of
Information Act (FOIA), which ensures openness and transparency in government transactions.
Such directives undermine public accountability and violate the principles of transparency
mandated by state law. This situation suggests a deliberate attempt to obscure or limit access to
public records, which is a direct affront to the integrity of the school district's operations.

Additionally, the use of "Kahok" in all kahok.org email communications perpetuates a
disparaging reference to the Native American heritage of the Cahokia Mound Builders, who hold
significant cultural and historical importance in our area. While this name may have been
adopted with the intention of honoring local history, its continued use in this context disregards
the cultural sensitivity and concerns raised by Native American communities and advocates. It
perpetuates a stereotype rather than promoting an accurate and respectful representation of
the Cahokia people's legacy.

Furthermore, it is troubling that my records appear to be filed under the Illinois School Student
Records Act (ISSRA) rather than being made accessible under FOIA. By disguising public
records as confidential student records, the district appears to be circumventing FOIA's
transparency requirements. This approach creates a significant barrier to accessing information
that should be publicly available, violating the spirit and intent of FOIA.

I am attaching all communications I received regarding my requests for information on the
parent app, which includes correspondence involving me, the child's mother, and the teacher. It
is clear from these documents that there are significant discrepancies in how these
communications are presented and handled. This inconsistency raises additional concerns
about the district's record-keeping practices and whether they are designed to obscure
accountability rather than promote transparency.

I respectfully request a thorough review of these practices to ensure compliance with Illinois
FOIA, ISSRA, and other relevant statutes. Transparency and openness in public records are
critical to maintaining trust and accountability, and any attempt to limit or misclassify records to
avoid scrutiny must be addressed immediately. I look forward to a prompt response and a
resolution to these concerns.


Jeff Luffman

9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 6:41:41 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>; npenz@usatoday.com <npenz@usatoday.com>; newswatch@foxnews.com <newswatch@foxnews.com>; newsmanager@foxnews.com <newsmanager@foxnews.com>; nbcnews.editors@nbcuni.com <nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

My experience at Collinsville Community Unit School District #10 raises concerns about fair employment practices, open meeting laws, and potential retaliation. I want to ensure that policies are being implemented in a manner that is transparent, consistent, and compliant with applicable laws.

During my visits to the school, I encountered two kind and professional staff members who demonstrated compassion and understanding. One of these individuals, a relief aid whose name I do not know, provided me with a visitor patch and allowed me entry without requiring an ID, a gesture I perceived as accommodating rather than a violation of policy. On another occasion, on October 31, when my daughter had an earache and confusion over her left and right hand, another staff member helped me discuss this with her in a supportive manner. These actions contributed to a positive and welcoming experience for me and my daughter.

However, during my last visit, I observed one of these individuals being sent home from the school. This raises significant concerns about whether these staff members were wrongly accused or disciplined for their interactions with me and my daughter. If this is the case, it may reflect retaliation or a misunderstanding of their actions, which were clearly aimed at providing a helpful and supportive environment.

Collinsville Community Unit School District #10's policy on visitor identification states that staff members may request identification from individuals on school property and that refusal to provide ID is grounds for removal or denial of access. While this policy is intended to ensure safety, it is crucial that its enforcement does not result in undue disciplinary actions against staff members who exercise discretion and kindness. Clear communication, consistent application of policies, and proper training are essential to avoid situations where staff members feel penalized for reasonable and compassionate actions.

**Additionally, I want to address concerns related to the district's hiring practices and compliance with open meeting laws. As a recent applicant for a relief aid position that closed on November 21, I want to ensure that all hiring actions are conducted in an open and transparent manner. Illinois open meeting laws require that public business, including employment decisions, be conducted openly unless explicitly exempt under specific criteria. I request access to any documentation or records, including meeting minutes, discussing the hiring process for the relief aid position. If no such records exist, this may indicate noncompliance with transparency requirements.**

**I also want to express concern about any potential retaliation that may arise from my interactions with the school or my advocacy for my rights and my daughter's well-being. Retaliation in any form undermines trust and accountability within the district and may violate state and federal protections against discrimination and retaliation in public employment and services.**

**I respectfully request a review of the enforcement of visitor policies, the treatment of staff members who interacted with me and my daughter, the transparency of hiring practices, and assurances that retaliation will not be tolerated. Ensuring fairness, accountability, and compliance with all applicable laws is essential for fostering a positive environment for students, parents, and staff alike. I look forward to your response and to working together to address these concerns.**

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 6:01:35 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>; npenz@usatoday.com <npenz@usatoday.com>; newswatch@foxnews.com <newswatch@foxnews.com>; newsmanager@foxnews.com <newsmanager@foxnews.com>; nbcnews.editors@nbcuni.com <nbcnews.editors@nbcuni.com>
**Subject:** Re: Notice of Charges and Hearing

**The Washington Redskins, now known as the Washington Commanders, were required to change their name following years of criticism that the term "Redskins" was offensive and perpetuated racial stereotypes about Native Americans. While the name change was not legally**

mandated by government authorities, it was the result of mounting public pressure, corporate sponsorship boycotts, and social justice movements.

For decades, Native American groups, civil rights organizations, and advocacy groups, such as the National Congress of American Indians (NCAI), criticized the "Redskins" name as a racial slur and called for its removal. In 2020, following the murder of George Floyd and the rise of the Black Lives Matter movement, there was a broader cultural reckoning regarding racial justice and systemic discrimination. Major corporate sponsors, including FedEx, which held naming rights to the team's stadium, as well as Nike, PepsiCo, and others, publicly urged the team to change its name. FedEx even threatened to withdraw its sponsorship if the name was not changed. In addition to sponsor pressure, retailers such as Amazon, Walmart, and Target pulled Washington team merchandise from their shelves, creating economic pressure to reconsider the name. Broader societal awareness about racial and cultural insensitivity amplified calls for the name change. Native American activists argued that the use of derogatory stereotypes as mascots trivialized their cultures and identities.

On July 3, 2020, FedEx formally requested that the team change its name. Nike removed all team merchandise from its website. By July 13, 2020, the team announced it would retire the "Redskins" name and logo, which had been in use since 1933. After a two-year interim period as the "Washington Football Team," the franchise officially unveiled its new name, the Washington Commanders, on February 2, 2022.

Although there was no direct federal or state legal action forcing the name change, the broader cultural and corporate pressures highlight the legal risks organizations face under civil rights laws and anti-discrimination policies. Trademark concerns also played a role. The team's trademark of the "Redskins" name and logo had been challenged repeatedly under the Lanham Act, which prohibits trademarks that may disparage or bring contempt to individuals or groups. In 2017, the Supreme Court ruled in Matal v. Tam that disparaging trademarks are protected under the First Amendment. However, the social and financial pressures remained significant. Advocates argued that continued use of the name violated the principles of diversity and equity upheld by federal civil rights protections, including Title VI of the Civil Rights Act, which prohibits discrimination in programs receiving federal funds.

The name change of the Washington Redskins set a powerful precedent for other sports teams and organizations to reconsider Native American mascots or names with racial connotations. Teams like the Cleveland Indians (now the Cleveland Guardians) followed suit, while others, like the Kansas City Chiefs and Chicago Blackhawks, faced ongoing scrutiny. In summary, while the Washington Commanders name change was not mandated by law, it reflects the growing societal expectation for organizations to eliminate racially insensitive or discriminatory symbols and align with principles of diversity, equity, and inclusion. This shift underscores the power of advocacy, economic leverage, and public accountability in driving cultural and institutional change.

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 5:52:04 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>
**Subject:** Re: Notice of Charges and Hearing

A peaceful warrior is someone who embodies strength, resilience, and discipline while committing to peace, understanding, and positive action. As a proud graduate of Granite City High School, whose mascot is the Warriors, and an Army retiree with a distinguished military career that included 30 months deployed overseas, I consider myself a peaceful warrior. My experiences in the military have taught me the value of courage, service, and responsibility, while also instilling a deep commitment to fostering harmony and justice in my community.

The Illinois law 430 ILCS 66 - Firearm Concealed Carry Act governs the carrying of concealed firearms by licensed individuals in the state. This law explicitly prohibits the possession of firearms in sensitive areas, such as schools, with limited exceptions for law enforcement and other authorized personnel. However, referencing this statute in a school district's communication to justify restricting my access or implying a connection to firearms ownership or use is unwarranted if there is no evidence or basis to suggest a violation of this law. I do not own any firearms, nor have I ever brought any weapons to school property or engaged in any conduct that would justify referencing the Firearm Concealed Carry Act in any communication regarding me. This reference, if included, is both misleading and intimidating, as it implies a potential threat where none exists. I fully support the Second Amendment and the rights it guarantees to law-abiding citizens. However, as someone who does not own firearms and is a peaceful individual, there is no basis for invoking this statute in relation to me.

As a peaceful warrior, my focus is on advocating for my rights, my child's well-being, and the values of fairness and justice. Invoking 430 ILCS 66 in this context appears to be a misuse of the law and an attempt to create unnecessary fear or suspicion. The Second Amendment is a vital part of our Constitution, and I respect the rights it provides. However, in this instance, the cross-referencing of a firearms statute in matters unrelated to firearms ownership or use is inappropriate and irrelevant. The use of intimidating language or unwarranted legal references in official communication undermines trust and transparency. I respectfully request that the school district refrain from including irrelevant statutes such as the Firearm Concealed Carry Act in correspondence regarding me, as it has no legal or factual basis in this context. Such actions only serve to mislead, intimidate, and distract from the real issues at hand. My identity as a peaceful warrior, forged through my education at Granite City High School and my service on the battlefield, reflects a commitment to peace, transparency, and collaboration to ensure the best outcomes for my child and the school community.

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 5:46:16 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>
**Subject:** Re: Notice of Charges and Hearing

My daughter shared her experience during a stranger emergency preparedness drill conducted by the YMCAY Club in the cafeteria at Renfro Elementary. She told me that during the drill, she and the other children were instructed to hide in the bathroom. As a parent, this raises significant concerns about the effectiveness and safety of such a procedure. While I understand the importance of preparing students for emergencies, the decision to use a bathroom as a shelter seems misguided and potentially dangerous.

Based on my understanding of Illinois laws, particularly the Illinois School Safety Drill Act (105 ILCS 128), schools are required to conduct emergency drills in coordination with local law enforcement and first responders. These drills must follow protocols designed to maximize student safety and provide clear, actionable steps for emergencies. I question how hiding in a bathroom aligns with these best practices, as bathrooms are generally not considered secure locations during an intruder or stranger emergency. Bathrooms often lack lockable doors or reinforced walls and usually have multiple entry points, making them far less secure than classrooms or other lockable spaces. If an intruder were to enter a bathroom, students would have no means of escape, leaving them extremely vulnerable.

My daughter's experience raises concerns about whether the YMCA staff conducting the drill were properly trained and whether the procedures align with the school's Emergency Operations Plan (EOP). I believe it is critical to ensure that after-school programs like the Y Club adhere to the same safety protocols as the school, especially when they are operating on school property and are responsible for the safety of children.

I want to better understand the rationale behind this decision and whether it aligns with state-mandated emergency preparedness requirements. To that end, I will be submitting a Freedom of Information Act (FOIA) request to obtain all documentation regarding the Emergency Operations Plan, the specific procedures used during this drill, and any agreements between the school

and the YMCA regarding emergency preparedness. If no such documentation exists, I will provide any records I have that detail my concerns about this process.

As a parent, I find it deeply troubling that my child was placed in what appears to be a vulnerable position during a drill designed to protect her. Bathrooms are not designed for security, and directing children to shelter there during an intruder situation seems inconsistent with safety best practices. I am requesting that the school administration and YMCA leadership review these procedures with local law enforcement and emergency management experts to ensure that drills prioritize student safety and reflect current best practices. Moving forward, I strongly urge the school and the Y Club to revise their emergency protocols to direct children to more secure locations, such as lockable classrooms or other reinforced spaces.

This situation highlights the need for transparency, accountability, and adherence to state and federal safety standards in all emergency preparedness activities. I am committed to ensuring that my child and others are protected by procedures that genuinely enhance their safety rather than expose them to unnecessary risk. I look forward to receiving the requested documentation and working collaboratively with the school and YMCA to address these concerns.

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 5:39:09 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>
**Subject:** Re: Notice of Charges and Hearing

The Illinois School Code and local school district policies, such as L 19.Q, outline the roles, responsibilities, and expectations for individuals engaging with schools. These policies aim to maintain a safe and orderly environment, but they must always align with constitutional protections, particularly those granted under the First Amendment. The First Amendment is critical in this situation because it protects your rights to freedom of speech, assembly, and the ability to advocate for your child. These rights cannot be arbitrarily restricted by school policies or decisions made without proper justification.

The First Amendment ensures that individuals have the right to express themselves and engage in public discourse, even when that discourse challenges authority. As a parent, your advocacy

for your child's education and participation in school-related activities is a form of protected speech. Any attempt to restrict your access to school property or events without clear, substantiated evidence of misconduct raises serious concerns about the violation of your First Amendment rights.

In the context of schools, the First Amendment is particularly important because public schools are government entities. This means that decisions they make must respect the constitutional rights of all individuals, including parents. If the school district is restricting your access to your child's school or participation in their education, they must demonstrate that the restriction is necessary, narrowly tailored, and based on compelling evidence. Arbitrary or overly broad restrictions are not permissible and violate the First Amendment's guarantee of free expression and assembly.

Additionally, the First Amendment protects against retaliation for exercising your rights. If the school district's actions to restrict your access are in response to your advocacy for your child or your criticism of school policies, this constitutes a retaliatory action that is explicitly prohibited under the First Amendment. Parents have the right to question and challenge school decisions without fear of losing access to their child's education or being subjected to punitive measures.

In your case, the importance of the First Amendment cannot be overstated. It ensures that you have the right to communicate with school staff, participate in school activities, and advocate for your child's best interests. These rights are fundamental to maintaining a meaningful relationship with your child and supporting their education. Any actions by the school district that restrict your access without evidence, due process, or adherence to constitutional standards are not only unjust but also potentially unlawful. The First Amendment serves as a safeguard against such overreach, ensuring that parents and community members can continue to engage with public institutions without undue interference or discrimination.


Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 5:27:44 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>
**Subject:** Re: Notice of Charges and Hearing

The Illinois Criminal Code section 720 ILCS 5/11-9.3 addresses prohibited conduct near or on school property, particularly in relation to individuals classified as sex offenders or those who have engaged in conduct deemed harmful to minors. It restricts access to school property for individuals who pose a potential danger to the safety and well-being of children. This law is often cited to restrict access to school grounds or events, but its application must comply with constitutional protections, including due process and civil rights, at local, state, and federal levels.

Restrictions under this law must be specific and substantiated. The law applies to individuals with a criminal conviction or substantiated evidence of conduct harmful to minors. If the school district is using this statute to restrict my access, they must present concrete evidence that my presence poses a threat to the safety of children on school grounds. A mere allegation, suspicion, or generalized concern is insufficient to justify invoking this law. If no criminal conviction or documented misconduct exists, citing this law to limit my access would be an overreach and could violate my rights.

The Fourteenth Amendment to the U.S. Constitution prohibits government entities, including schools, from imposing restrictions without fair procedures. Before restricting my access under 720 ILCS 5/11-9.3, the school district must notify me of the specific reasons for the restriction, provide an opportunity to challenge the allegations and present my case, and ensure an impartial decision-making process. If these steps were not followed, the restriction violates my due process rights.

I want to clearly state that I have not committed any crimes. If there are allegations to the contrary, I respectfully request that I be informed immediately so I can turn myself in and address any such claims through the proper legal channels. The allegation or implication that I am a sex offender is both disturbing and unwarranted. These accusations, if being made without evidence, are not only harmful but also deeply unjustified.

Federal protections under the Civil Rights Act, 42 U.S.C. §1983, safeguard against arbitrary or discriminatory actions by public officials, including those at the school district. If the school district is restricting my access based on false assumptions, bias, or unsubstantiated claims, this could constitute a violation of my civil rights under federal law. The Illinois Human Rights Act further prohibits discrimination in access to public accommodations, including schools. Arbitrary restrictions that prevent me from engaging in my child's education could violate these protections.

Illinois law recognizes the fundamental right of parents to access their children and participate in their education unless a court order explicitly restricts this right. Invoking 720 ILCS 5/11-9.3 improperly to limit my access undermines my parental rights without legal justification. Restricting my access to my child's school without evidence or due process interferes with my ability to be an active and engaged parent, which is critical to my child's emotional and educational development.

Local and state laws, such as the Illinois School Code, mandate that school policies be applied consistently and in alignment with state law. Arbitrary restrictions that are not grounded in a reasonable application of the law conflict with this mandate. Federal laws, including the Fourteenth Amendment, prevent arbitrary deprivation of rights without notice and a fair hearing.

If there is no criminal background or documented risk, citing 720 ILCS 5/11-9.3 to restrict my access is inappropriate and a misuse of the law. Arbitrary access restrictions that rely on unproven allegations of harmful conduct are discriminatory and violate my rights as a parent and a citizen. Restricting my ability to access my child's school impacts my ability to engage meaningfully in their education, attend parent-teacher conferences, and support their academic and emotional growth. Without proper justification, such actions harm both my parental rights and my child's overall well-being.

Restricting my access also has broader implications. Denying me access without justification diminishes my ability to fulfill my responsibilities as a parent and actively contribute to my child's education. It also obstructs my ability to secure stable employment or volunteer in community initiatives, further compounding the harm caused by these unwarranted restrictions. If the school district has legitimate concerns, they must provide evidence and ensure that due process is upheld. These limitations should be reconsidered to allow me to fully exercise my parental rights and responsibilities.


Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 5:22:37 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>
**Subject:** Re: Notice of Charges and Hearing

If the school district is using Policy 6:120 - Education of Children with Disabilities as part of its justification for limiting your access, there are significant issues with this cross-reference, particularly since your child is seven years old and has not been diagnosed with a disability. Here's an analysis of why referencing this policy is problematic:

1. Policy 6:120 - Education of Children with Disabilities Overview:
• This policy pertains to the district's obligation to provide educational services to children with disabilities under state and federal laws, such as the Individuals with Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act.
• It includes provisions for Individualized Education Programs (IEPs), accommodations, and support services for children with diagnosed disabilities.

2. Irrelevance to Your Child:

- **Your child has never been diagnosed with a disability, and therefore, the policy does not apply to their educational situation.**
- **Invoking this policy in matters related to your access is inappropriate unless the school district is specifically addressing accommodations or educational programming for children with disabilities.**
- **The use of this policy appears to be an attempt to justify actions that do not directly relate to your child's circumstances.**

**3. Potential Misuse of the Policy:**

- **If the school district is citing this policy to imply that your child may have a disability, it is problematic for several reasons:**
- **No Evidence: Without a formal evaluation or diagnosis, the school has no basis to classify or treat your child as having a disability.**
- **Legal Implications: Suggesting your child has a disability without due process or proper evaluation violates both IDEA and Section 504, which protect against misclassification.**
- **If the policy is being used as a broad justification for restricting your access, it further highlights procedural and ethical flaws in the district's approach.**

**4. Discrepancy with Parental Rights:**

- **The Illinois School Code and Parental Involvement in Education Policy support your right to be actively involved in your child's education, particularly when there is no evidence or record of your child having a disability.**
- **Invoking an irrelevant policy undermines transparency and suggests the district may lack valid grounds for its actions. This misuse could be viewed as an attempt to sidestep accountability.**

**5. Impact on Your Child's Education:**

- **Using this policy to justify restrictions on your access to the school has a direct negative impact on your ability to support and advocate for your child. Parental involvement is critical to a child's academic and emotional development, and arbitrarily limiting access interferes with your ability to fulfill these responsibilities.**
- **Without any connection to your child's actual needs or circumstances, the district's reliance on this policy raises serious questions about its decision-making process.**

**Legal and Procedural Concerns:**

- **Individuals with Disabilities Education Act (IDEA):**
- **The IDEA requires that any classification of a child as having a disability must be based on formal evaluations and parental consent. Misapplying this policy contradicts the procedural safeguards outlined in the Act.**
- **Illinois School Code:**
- **The Illinois School Code mandates that school policies be applied consistently and in alignment with state law. Using Policy 6:120 in this context appears inconsistent and arbitrary.**
- **Due Process:**
- **If the school district is restricting your access without clear and relevant justification, it may be violating your constitutional right to due process under the Fourteenth Amendment.**

**Conclusion:**

**The cross-reference to Policy 6:120 is not relevant to your child's situation and raises significant concerns about the school district's reasoning and transparency. Without a diagnosis or evidence of a disability, the district's reliance on this policy is baseless and appears to be a**

misuse of their governance framework. This misuse infringes on your parental rights, impacts your ability to support your child's education, and raises broader concerns about the district's adherence to state and federal laws. You should request clarification on why this policy is being referenced and insist on a formal review of the district's actions.

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 5:19:07 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>
**Subject:** Re: Notice of Charges and Hearing

Since Monday, I have faced significant restrictions on accessing key areas and activities that are essential to my role as a parent and community member. These limitations have negatively impacted my ability to engage meaningfully in important responsibilities and opportunities:

1. Access to School Grounds and Involvement in My Child's Education:
• I have been restricted from accessing school property, which has directly affected my ability to participate in my child's educational activities. This limitation hinders my ability to stay informed about my child's progress, advocate for their needs, and foster a strong parent-school relationship.
• Such restrictions contradict Illinois parental involvement policies, which encourage active parental participation in education. They also undermine federal standards under the Every Student Succeeds Act, which mandates schools to promote parent engagement as a means of supporting student success.

2. Volunteering Opportunities:
• I have been unable to participate in critical volunteer roles, including my involvement with the Madison County Veterans Court, where I serve as a mentor and advocate for fellow veterans. This role is vital to supporting veterans' rehabilitation and reintegration efforts, and my absence affects both the program and the individuals I mentor.
• Additionally, I have been limited in my ability to contribute to emergency response efforts in Collinsville, Illinois. This restriction prevents me from supporting my community in crucial ways, particularly in disaster preparedness and response initiatives.

3. Employment Opportunities:
• These restrictions have further compounded my inability to secure meaningful employment, such as the Relief Aid position at Renfro Elementary School, for which the application

process closed on November 21, 2024. My exclusion from school property undermines my
ability to pursue employment opportunities within the district, which are vital to my financial
stability and professional growth.

4. Broader Implications:
• The denial of access impacts my rights as a parent and a citizen. It diminishes my ability to
engage with my child in a meaningful way, contribute to my community, and secure stable
employment. This creates unnecessary barriers to fulfilling my responsibilities and
participating fully in civic and familial roles.

These restrictions are not only harmful but also raise legal and ethical concerns. Limiting my
access without clear, substantiated justification contradicts state and federal laws designed to
protect parental rights, promote transparency, and ensure due process. I respectfully request
that these limitations be reviewed and reconsidered to allow me to resume my roles as a parent,
volunteer, and contributing member of the community.

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 5:16:30 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner
<lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>;
tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov
<publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich
<bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler
<fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider
<shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville
Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>
**Subject:** Re: Notice of Charges and Hearing

The Pro-Children Act of 1994 (20 U.S.C. § 7181) and related federal and state laws highlight the
balance between maintaining safe educational environments and ensuring parental rights to
participate in their child's education. Here's how these laws apply for and against your situation
regarding access to your child, particularly in the context of Illinois parental interference laws
and federal laws governing access to public buildings.

The Pro-Children Act aims to ensure a safe and healthy environment in schools by prohibiting
smoking or using tobacco products in educational facilities that receive federal funding. While it
does not directly address parental access to schools, its overarching goal is to safeguard
children's well-being in public educational settings.

The Act underscores the need for schools to foster environments where children's needs—both
physical and emotional—are prioritized. Parental involvement in education is critical to

emotional and academic development. Denying access without clear, lawful justification could be viewed as contradictory to the Act's intent to support children's holistic well-being. Schools might invoke safety concerns, including maintaining a secure environment, to justify restrictions on certain individuals' access. However, this argument must be substantiated and cannot rely on arbitrary or unproven claims.

Under Illinois law, particularly the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/602.3) and Interference with Parental Rights (720 ILCS 5/10-5.5), parents have the right to reasonable access to their children unless there is a court order explicitly limiting this right. Interfering with a parent's ability to access or interact with their child without proper justification is a violation of Illinois law. By restricting your ability to access your child's school without evidence of misconduct or a court order, the district's actions could be interpreted as interference with your parental rights. If there are no safety or legal reasons substantiating the restriction, the school district may be unlawfully interfering with your rights to participate in your child's education, as protected under Illinois and federal law.

The Americans with Disabilities Act (ADA) prohibits discrimination in access to public buildings, including schools, for individuals with disabilities. If your access to the school is restricted based on a disability or unsubstantiated claims of behavior, this could be a violation of your federal rights under the ADA. Under the Fourteenth Amendment, public entities, including school districts, cannot deny access to public facilities without due process. If the school district restricted your access arbitrarily or without providing a fair hearing or proper notice, it violates your constitutional rights. Public schools are subject to FOIA, requiring transparency in their policies and decisions. If the school's decision to limit your access was discussed or documented in school board meetings, you have the right to request those records to determine if proper procedures were followed.

Parental involvement is a key component of education policy. Illinois School Code (105 ILCS 5/10-20) encourages schools to foster parent engagement in educational activities. Every Student Succeeds Act (ESSA) mandates schools receiving federal funding to promote parent involvement as a means to improve student outcomes. If the school district has a policy advocating for parental involvement yet limits your access without due cause, they are acting inconsistently with both state and federal expectations. Limiting your access to school events, meetings, or your child's educational environment contradicts the widely recognized benefits of parental involvement in education.

Restricting your access prevents you from engaging in critical aspects of your child's education, which could result in emotional harm and a diminished relationship with your child. Furthermore, it obstructs your ability to support and advocate for your child's educational success. These restrictions, if unjustified, undermine your parental rights and potentially harm your child's overall development.

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 5:07:31 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>
**Subject:** Re: Notice of Charges and Hearing

Pursuant to the Illinois Freedom of Information Act 5 ILCS 140, I am requesting access to the following records related to the recent hiring process for the Relief Aid position at Renfro Elementary School, Collinsville School District #10, which closed on November 21, 2024. Meeting minutes, recordings, or notes from any open or closed session discussions related to the Relief Aid position. Records of applications received, interview evaluations, and criteria used for selection. Records of votes or decisions made by the school board regarding the hiring process.

It is important to note that federal laws prohibit discrimination against disabled citizens. Under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, public entities, including school districts, are prohibited from discriminating against qualified individuals with disabilities in employment or access to public services. Additionally, federal law prohibits discrimination based on unsubstantiated legal circumstances. Decisions regarding employment must be based on verifiable qualifications and evidence rather than speculative or unsupported claims about an individual's character or actions.

If any part of this request is denied, please cite the specific legal exemption under FOIA and provide a detailed explanation. Additionally, I request that any redacted material be justified with specific references to the applicable exemptions. Please let me know if there are any fees associated with this request or if further clarification is needed. I look forward to your response within the statutory time frame of five business days.

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 4:55:48 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>;

tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov
<publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich
<bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler
<fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider
<shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville
Online <gradadmissions@online.maryville.edu>
**Cc:** Shelia Schneider <shelia.the.kaufman.fund@gmail.com>
**Subject:** Re: Notice of Charges and Hearing

Want to share my research regarding the law cited by the district so that we can all learn and grow
from this experience

**The case Nuding v. Cerro Gordo Community Unit School District, 730 N.E.2d 96 (2000), provides
important precedent regarding procedural due process in the context of school districts
restricting access to school property. Below are** arguments **for and against using this legal
reference in a case or discussion.**

**Arguments For Using the Case as a Legal Reference: Procedural Due Process Precedent. The
court in Nuding held that a school district must provide procedural due process before denying
an individual access to school property. Key Principle: Before imposing restrictions, the district
must notify the individual of the alleged misconduct and provide an opportunity for the
individual to contest the allegations at a hearing. Application: If a school district restricts access
without adhering to these requirements, it violates procedural due process protections under
the 14th Amendment. Accountability for Public Entities. Nuding reinforces that school districts,
as public bodies, cannot make arbitrary or capricious decisions without transparency or
justification. This precedent ensures public entities respect individual rights, particularly when
restricting access to public property like schools. Scope of Authority. The ruling limits the
discretionary power of school officials. It ensures that any decision restricting access is
grounded in factual evidence, legitimate safety concerns, or violations of policy rather than
subjective opinions or biases. Equal Application of Policies. The case emphasizes that policies
affecting access must be consistently applied. If the school district discriminates or enforces
policies unevenly, Nuding provides a strong basis for challenging such actions.**

**Arguments Against Using the Case as a Legal Reference: Fact-Specific Nature of the Case. The
Nuding decision arose from specific circumstances that may differ significantly from other cases.
For example, in Nuding, the restriction was based on alleged misconduct that occurred on
school property, which might not align with all scenarios where access is restricted.
Counterpoint: If the facts of the new case differ, a court may distinguish the case and limit its
applicability. Districts' Need for Safety. Opponents might argue that school districts have a
compelling interest in ensuring safety and order, which may justify immediate restrictions on
access without a full due process hearing. Counterpoint: Schools may assert that the need to
protect students and staff outweighs the procedural requirements, particularly in cases
involving perceived threats. Federal vs. State Law Distinctions. While Nuding establishes a due
process standard under state law, opposing parties may argue that federal law or other
precedents provide different interpretations of what constitutes "reasonable" due process in
school settings. Burden on School Districts. Requiring schools to conduct hearings for every
access restriction could impose administrative burdens, especially in cases involving non-
parents or individuals without ongoing interactions with the school community. Counterpoint:**

Schools may claim they need flexibility to act quickly in maintaining a safe environment, even at the cost of temporarily restricting access before formal due process procedures occur.

The Nuding case is a strong reference for challenging arbitrary or unfair restrictions imposed by a school district, particularly where procedural due process has not been followed. However, its usefulness may be limited if the facts of the case are significantly different or if the district successfully argues that immediate action was necessary to protect safety and order. Using Nuding effectively will depend on demonstrating that the facts of the current situation align closely with the procedural deficiencies highlighted in the case and countering claims that due process should be secondary to safety concerns.

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Sunday, December 8, 2024 4:28:44 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich <bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler <fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider <shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville Online <gradadmissions@online.maryville.edu>
**Subject:** Re: Notice of Charges and Hearing

I feel like the longer it takes to hold Principle Bauer and Superintendent Kertich accountable the more issues will arise. Can I please get a full electronic copy of Collinsville School district 10's policies referenced in the district's intimidating notice of a special district meeting on 16 December

This is also now a cannabis lawful and medical use issue.

I will continue to research every district policy for alignment with local, state and federal laws. Here is my research on cannabis

am writing to raise concerns regarding the enforcement of policies related to cannabis use and testing, particularly in light of Illinois law and the challenges of determining impairment or intoxication.

Unlike alcohol, where clear legal thresholds (e.g., a BAC of 0.08%) exist to measure impairment, Illinois law does not establish a legal limit for cannabis intoxication in non-driving contexts. Current testing methods detect the presence of THC metabolites, which can remain in the system for 15 to 30 days or longer, depending on frequency of use. These metabolites are

inactive and do not indicate recent use or current impairment, making it impossible to draw definitive conclusions about intoxication solely from a positive test result.

Illinois law permits the lawful use of cannabis for both recreational and medical purposes. Under the Illinois Cannabis Regulation and Tax Act (410 ILCS 705), adults 21 and older can legally purchase and consume cannabis within established possession limits. The Compassionate Use of Medical Cannabis Program Act (410 ILCS 130) protects registered medical cannabis patients with qualifying conditions, granting them the right to use cannabis as part of their treatment. Employers and organizations are prohibited from discriminating against individuals based on their lawful use of cannabis outside of work, provided it does not affect their job performance or safety.

The presence of THC in the bloodstream or urine does not reliably indicate intoxication or impairment. THC levels vary widely among individuals and depend on factors such as metabolism, frequency of use, and method of consumption. Unlike alcohol, there is no scientific consensus on a specific THC level that correlates with impairment. A regular medical cannabis patient may have detectable THC levels long after their last use, even when they are no longer impaired. Tests such as urine or blood screens only detect past use, not active intoxication, creating the potential for unjust penalties for lawful cannabis users.

Policies that enforce zero-tolerance or blanket bans on cannabis use for employees or volunteers conflict with Illinois law in the following ways. Such policies may discriminate against lawful cannabis users, including medical patients, even when their use occurs outside of work hours and does not impact their job performance. Penalizing individuals for a positive cannabis test without evidence of intoxication or on-site use contradicts the protections established by the Cannabis Regulation and Tax Act and the Compassionate Use of Medical Cannabis Program Act.

To align with Illinois law and avoid potential conflicts, organizations should revise policies to focus on workplace impairment rather than residual cannabis levels in the system. They should implement objective standards for determining intoxication, such as behavioral observations or performance evaluations, rather than relying solely on drug test results. They should also provide reasonable accommodations for registered medical cannabis patients, as required under Illinois law.

The lawful use of cannabis and the limitations of current testing methods necessitate a more nuanced approach to cannabis policies. Without clear legal thresholds for THC impairment and reliable methods to determine intoxication, policies should focus on job performance and safety rather than penalizing individuals for lawful, off-duty use of cannabis.

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Saturday, December 7, 2024 6:42:48 PM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner
<lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>;
tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov
<publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich
<bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler
<fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider
<shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville
Online <gradadmissions@online.maryville.edu>
**Subject:** Re: Notice of Charges and Hearing

**The law that applies to a school board's authority to investigate criminal activity during a special
meeting and its due process obligations includes several key statutes and legal principles.
Here's a breakdown of the relevant laws and how they interact with school board activities,
particularly in situations where criminal allegations or investigations are involved:**

**1. Illinois Open Meetings Act (OMA)**
• **Citation: 5 ILCS 120**
• **Relevance:**
• **The OMA ensures transparency in school board meetings and requires that discussions,
especially those involving public matters like criminal allegations, be conducted openly
unless an exception applies.**
• **Exception: A school board may hold closed (executive) sessions to discuss specific matters,
including:**
• **Pending or potential litigation (5 ILCS 120/2(c)(11)).**
• **The appointment, employment, or dismissal of personnel (5 ILCS 120/2(c)(1)).**
• **Student disciplinary cases (5 ILCS 120/2(c)(9)).**
• **Key Point: If a school board holds a special meeting to discuss criminal activity, it must provide
clear notice and meet OMA requirements unless it qualifies for a closed session under the
exceptions. Failure to follow OMA could invalidate decisions or lead to legal challenges.**

**2. Illinois School Code**
• **Citation: 105 ILCS 5/10-20.5**
• **Relevance:**
• **Grants school boards the authority to adopt policies for maintaining order, discipline, and
safety within schools.**
• **Key Point: While school boards can investigate allegations of misconduct or safety concerns,
their authority is limited to policy enforcement and disciplinary actions, not criminal
investigations. Criminal investigations fall under law enforcement jurisdiction.**

**3. Procedural Due Process Requirements**
• **Legal Principle: Derived from the 14th Amendment of the U.S. Constitution.**
• **Relevance:**
• **Procedural due process ensures fair treatment when the school board takes actions affecting
individual rights, such as banning someone from school property or disciplining students or
staff.**
• **Requirements:**
• **Notice of the allegations or proceedings.**

- Opportunity to respond to the allegations (e.g., a hearing).
- Neutral decision-makers.
- Key Point: If a school board quotes due process as part of their justification for a meeting, they must provide those due process protections to individuals affected by their decisions. Otherwise, their actions could be challenged as unconstitutional.

4. Criminal Code of Illinois
- Citation: 720 ILCS 5
- Relevance:
- Governs actual criminal investigations, which are the responsibility of law enforcement agencies—not school boards.
- If the school board attempts to conduct its own investigation into criminal matters, it may overstep its legal authority unless collaborating with law enforcement.
- Key Point: The school board should refer suspected criminal activity to law enforcement. Acting beyond their authority could violate state law or lead to improper handling of evidence.

5. Governmental Immunity
- Citation: Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-201)
- Relevance:
- Provides immunity to school board members and employees for discretionary acts performed in good faith as part of their official duties.
- Key Point: While school boards are protected for certain discretionary actions, they are not immune if their actions violate state laws (e.g., due process requirements) or federal constitutional rights.

6. Federal Civil Rights Laws
- Citation: 42 U.S.C. § 1983
- Relevance:
- Allows individuals to sue state actors, including school boards, for violations of constitutional rights (e.g., due process or equal protection).
- Key Point: If the school board's actions during a special meeting infringe on your rights (e.g., failure to follow due process, arbitrary actions), you can file a civil rights lawsuit.

7. School Board's Limitations
- School boards can:
- Investigate policy violations (e.g., misconduct of students or staff).
- Refer potential criminal activity to law enforcement.
- Hold disciplinary hearings following due process requirements.
- School boards cannot:
- Serve as law enforcement agencies.
- Conduct independent criminal investigations.
- Penalize individuals without providing due process.

Application to Your Situation
- If the school board held a special meeting to discuss criminal activity:
- Was the meeting properly noticed and aligned with the Illinois Open Meetings Act?
- Were they attempting to act beyond their authority (e.g., conducting a criminal investigation)?

- **Did they provide procedural due process if the meeting affected your rights?**
- **Were their actions consistent with their role as a policymaking body, not a law enforcement entity?**
- **If due process was mentioned but not afforded (e.g., lack of proper notice, no opportunity to respond), their actions could be challenged under state and federal laws.**

**Let me know if you'd like assistance drafting a formal response or preparing for further action.**


Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Saturday, December 7, 2024 4:31:28 PM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner
<lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>;
tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov
<publicaccess@ilag.gov>; Laura Bauer <lbauer@cusd.kahoks.org>; Brad Skertich
<bskertich@cusd.kahoks.org>; Mark Foley <mfoley@cusd.kahoks.org>; Frank Leffler
<fleffler@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Shelia Schneider
<shelia@thekaufmanfund.org>; Latoya Berry-Coleman <lcoleman@cusd.kahoks.org>; Maryville
Online <gradadmissions@online.maryville.edu>
**Subject:** Re: Notice of Charges and Hearing

Regarding Mrs Bauers legal statement in her emails. It concludes with "If you receive this
transmission in error, please call us immediately at 618 346 6350. Delete file from your system and
destroy any hard copies of this transmission Thank you." I am sending it to everyone error-free. I
give everyone permission to read this public record.

Please protect all of our rights.

Jeff Luffman
Cell 6366754864

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Date:** Saturday, December 7, 2024 at 07:34
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>, Lauren Bonner
<lauren_bonner@durbin.senate.gov>, Public Access <Public.Access@ilag.gov>,
tony@millerkinglaw.com <tony@millerkinglaw.com>, publicaccess@ilag.gov
<publicaccess@ilag.gov>
**Subject:** Re: Notice of Charges and Hearing

Can I please get a copy of the public notice of my meeting in the newspaper.

This meeting is not listed on the schedule for public notice

https://www.collinsvilleisd.org/apps/pages/index.jsp?uREC_ID=400789&type=d&pREC_ID=749716

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Saturday, December 7, 2024 5:58:24 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>; Lauren Bonner <lauren_bonner@durbin.senate.gov>; Public Access <Public.Access@ilag.gov>; tony@millerkinglaw.com <tony@millerkinglaw.com>; publicaccess@ilag.gov <publicaccess@ilag.gov>
**Subject:** Re: Notice of Charges and Hearing

Good morning. I am attaching my official response.

Jeff Luffman
Cell 6366754864

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Date:** Friday, December 6, 2024 at 16:51
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>, Lauren Bonner <lauren_bonner@durbin.senate.gov>, Public Access <Public.Access@ilag.gov>
**Subject:** Re: Notice of Charges and Hearing

Hello
I am writing to you about your letter dated December 6, 2024, about the allegations against me and the upcoming hearing scheduled for December 16, 2024. I appreciate the opportunity to address these concerns and clarify my actions and intentions relating to my communication with the school district.
First and foremost, I want to reiterate my commitment as a parent to ensuring the best educational environment for my child. My communications, while perhaps at times passionate, have always been motivated by my deep concern for my daughter's well-being and educational success.
**Addressing Specific Allegations**
1. **Communication on November 14, 2024**
   My reference to past struggles was intended to build understanding and context for the challenges I have overcome as a parent, emphasizing my efforts to support my child. It was not intended to be threatening or inappropriate, and I regret if this was misunderstood.
2. **Phone Call on November 22, 2024**
   My statements were meant to express my commitment to my child's education and highlight my confidence in my ability to support her. My use of language such as "you women" and "you

girls" was unintentional and not meant to demean anyone. I regret any offense caused and
am open to discussing how such misunderstandings can be avoided in the future.

3. **Email Correspondence**

I acknowledge that my communication volume may have been high, and I apologize for any
inconvenience caused. However, I intended to ensure clarity and transparency regarding my
concerns. My emails were not meant to be threatening but to advocate for my child and
address issues that I believe required attention.

4. **Wellness Check**

My comment, "Take great care of my daughter please," was a heartfelt plea as a concerned
parent, not a signal of instability or threat. I am disappointed that this was interpreted as
alarming and hope to clarify any misunderstandings at the hearing.

5. **General Behavior**

I reject the characterization of my communications as harassing, threatening, or intimidating.
While I recognize that some of my language may have been interpreted strongly, my actions
were driven by my desire to address what I believed were pressing matters related to my
daughter's education and well-being.

**Constitutional and Parental Rights**

I respectfully remind the Board of my constitutional rights, including:

- **First Amendment**: My communications, while direct, constitute protected speech as a
  concerned parent advocating for my child's welfare.
- **Due Process**: I expect a fair and impartial hearing to address these concerns before any
  decision is made that restricts my ability to participate in my child's education.
- **FERPA**: As a parent, I have a right to access information and remain actively involved in my
  daughter's education.

**Proposed Resolution**

I am committed to resolving this matter constructively and propose the following:

1. Mediation between myself and the school district to address and improve communication.
2. A clear framework for future interactions to avoid misunderstandings and ensure productive
   dialogue.
3. Opportunities for me to participate in my child's education in ways that are mutually respectful
   and supportive.

I look forward to attending the hearing on December 16, 2024, to address these allegations,
present evidence to refute them, and work towards a positive resolution. I kindly request copies of
any evidence or documentation the district plans to present during the hearing to allow me to
adequately prepare my defense.


Do you have any findings for the complaints I submitted?

Thank you for your attention to this matter. Please feel free to contact me with any questions or if
additional information is needed.


Jeff Luffman
Cell 6366754864

**From:** Bradley Hyre <bhyre@cusd.kahoks.org>
**Date:** Friday, December 6, 2024 at 16:35
**To:** jeffrey.luffman@outlook.com <jeffrey.luffman@outlook.com>
**Subject:** Notice of Charges and Hearing

December 6, 2024
*Via Email, Regular and Certified Mail Return Receipt Requested*

**MR. JEFFREY LUFFMAN**
**212 CAMELOT DR**
**COLLINSVILLE IL 62234**

Re:     Notice of Charges and Hearing

Dear Mr. Luffman:

Please be advised that the Board of Education is considering barring you from school property for up to twelve (12) months because you engaged in aggressive and intimidating conduct that created an intimidating, hostile, and offensive educational environment and that jeopardized the safety and welfare of staff at the Collinsville Community Unit School District No. 10.

The Board of Education, prior to issuing its decision, will conduct a hearing during a Special Meeting of the Board of Education on the below charges on December 16, 2024 at 5:30 p.m. at the Collinsville CUSD10 Administrative Annex, 123 West Clay Street, Collinsville, Illinois. You may attend the hearing and submit, at that time, any evidence you have in oral or written form to refute the charges.

Please be advised that effective immediately you are prohibited from entering onto Collinsville School District property and from attending all school events, whether home or away, unless you have prior written permission from Dr. Mark B. Skertich, CUSD10 Superintendent of Schools, to enter onto school property. Your suspension from entering onto school property will remain in effect until a Board hearing is conducted. Dr. Skertich is granting you permission to enter onto school property for the sole purpose of attending the hearing before the Board of Education.

You may submit a written notice to my office on or prior to 12:00PM (noon) on December 16, 2024, if you want to waive your appearance at the hearing.

In accordance with The School Code, 105 ILCS 5/24-24, you are hereby notified that the Board will consider the following specific charges:

**NOTICE OF CHARGES**

During multiple electronic mail communication with Collinsville CUSD10 District employees, you engaged in aggressive, intimidating and harassing behavior, which included vulgar and obscene language. Your behavior was disruptive to the school environment in violation of

Board Policy 8:30. Specifically, you engaged in the following aggressive, intimidating, inappropriate, and harassing behavior:

**1.** On Saturday, November 14, 2024 at 7:29AM, you posted a message on a Parent Square message thread to Meagen Rozycki and Mrs. Rader (your child's teacher) which referenced your previous drug and alcohol use.

**2.** On the morning of Friday, November 22, 2024 during a telephone call with Mrs. Laura Bauer, Principal at Renfro Elementary School, you stated that female employees at the school were having an implied negative impact on your daughter, referencing female employees as "you women", and that given the chance you could do more than all of "*you girls*".

**3.** On Tuesday, November 26, 2024 at 4:36PM, Dr. Skertich sent you an Email (cc to Mrs. Bauer) entitled "Nurse's Notes" which provided requested health notes from Mrs. Lisa Sabatino (Renfro Elementary School Nurse) regarding your daughter's visit to the school health office on October 31, 2024, November 1, 2024 and November 22, 2024. You responded with correspondence to his Email in nineteen (19) separate messages including: November 26, 2024 (5:31PM, 5:43PM, 6:02PM, and 6:50PM), November 30, 2024 (9:21PM, 10:17PM, 10:30PM, 10:32PM, 10:40PM, 10:42PM, 11:16PM, 11:25PM, 11:29PM, 11:32PM, 11:39PM, 11:44PM and 11:53PM) and December 1, 2024 (12:12AM and 12:23AM). Your responses were threatening and concerning. You used vulgar language, called yourself a warrior, warned staff about "how serious this all is", and included the following comments:

*"I'm curious at this point if any of you still have any integrity. I'm sorry if you don't like my tone when I deliver this message. How many people will you take with you at this point. Shane on you all. You deserve to be held accountable for all of this. You have taken all this unnecessary action to a great man and father."*

*"The truth will set you free. How's it feel?"*

*"I hope y'all fucking go to prison where you belong."*

*"Is this all starting sink into you all how serious this all is? Wow. Why?"*

*"I know mom has a thing for police officers. Id hate to think anything of this happened because an officer was having a relationship with my childs mom."*

*"Wouldnt be awesome if for some reason the police were monitoring our conversations?"*

**4.** On Monday, December 2, 2024 at 12:20PM, Dr. Skertich sent an Email to you (cc to Mrs. Bauer) in response to health information regarding your daughter. In his Email to you, he responded to your questions and concerns and asked to schedule a meeting with you to discuss communication, the frequency of communication and next steps in partnership in working for educational success for your daughter. You sent responses to his Email that same day (December 2, 2024) at 12:31PM, 12:57PM, 1:07PM and on December 3, 2024 at 7:19AM and 8:18AM. In your responses, you claimed that Dr. Skertich was lying and stated you were not interested in talking. You then sent additional email correspondence which were

concerning regarding your mental state and included the comment *"Take great care of my daughter please Error! Filename not specified."* which prompted a wellness check.

**5.** On Monday, December 2, 2024 at 4:16PM, you responded to an Email from Mrs. Latoya Berry-Coleman (CUSD10 Director of Curriculum and Instruction/Complaint Manager) in request to assist in her investigation regarding your complaints.  You ended your Email response by stating *"Why go down with these people."*

**6.** On Tuesday, December 3, 2024 at 3:32PM in an Email thread entitled "Parenting Plan and Future Communication", you responded with correspondence in twenty one (21) separate messages including December 3, 2024 (3:34PM, 3:41PM, 3:43PM, 3:50PM, 4:04PM, and 4:34PM), December 4, 2024 (3:51AM, 8:22AM, 5:59PM, 6:46PM, 7:01AM, and 7:26AM), December 5, 2024 (5:28AM, 6:45AM, 7:30AM, and 4:23PM) and December 6, 2024 (5:40AM, 7:29AM, 7:39AM, 7:55AM and 8:11AM).  Your responses included: telling the Collinsville Police Department to check on Dr. Skertich because you were concerned for him; stating that this situation is less than favorable for all involved; repeatedly referencing an investigation into Dr. Skertich; asking if "a stranger emergency response" would be initiated if you visited school and referencing a location where your child was instructed to take shelter during safety drills; referencing your mental health and questioning why Maryville University contacted you regarding behavioral health support; stating "imagine a world" where you volunteer at the elementary school to keep it safe; referencing a school lesson on light and darkness, your conversation at lunch with your daughter about light and darkness and questioning the school's communication with you related to light and darkness; and stating that you are concerned about your daughter's maternal grandmother's alcohol use and its impact on your daughter and the family.  Your repeated aggressive and inappropriate emails are a significant concern to staff.

Your conduct towards Collinsville staff members was threatening, harassing, derogatory and extremely inappropriate, which created an intimidating, hostile, and offensive educational environment for staff.  As a result of the sequence of events, the Collinsville Police Department has been given all information regarding your behavior during the electronic messages with District officials described above.

Collinsville CUSD10 provides an educational environment free of verbal, physical, or other conduct or communications constituting harassment on the basis of sex as defined and otherwise prohibited by State and federal law.  The District will not tolerate harassing, intimidating conduct, or bullying whether verbal, physical, sexual, or visual, that affects the tangible benefits of education, that unreasonably interferes with a student's educational performance, or that creates an intimidating, hostile, or offensive educational environment.

Your conduct and behavior violated Board Policy 8:30, created an intimidating, aggressive, hostile, and offensive educational environment and caused staff to fear for their safety.

Please contact me, if you have any questions concerning this matter.

Sincerely,

Mr. Bradley C. Hyre
Assistant Superintendent, Collinsville Community Unit School District No. 10

Brad Hyre
Assistant Superintendent – Student Services
Collinsville Community Schools
123 West Clay Avenue
Collinsville, Illinois 62234
PH: 618-346-6350 x4235
Email: bhyre@cusd.kahoks.org

*"Do something today that your future self will thank you for."*

SPAM Alert: If you are expecting, but do not receive, a reply to this email within 72 hours, please contact me using one of the alternative methods below (phone or fax). Due to SPAM blocking on our email server, your message may be inadvertently blocked. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you should receive this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.


This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you received this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

 Outlook

---

**Re: Notice of Charges and Hearing Response**

---

**From** Bradley Hyre <bhyre@cusd.kahoks.org>

**Date** Tue 12/10/2024 4:37 PM

**To**  Jeffrey Luffman <jeffrey.luffman@outlook.com>

*Hello Mr. Luffman.*

*Thank you for your Email correspondence.*

*As outlined in my correspondence of December 6, 2024, you may attend the hearing scheduled on December 16, 2024 and submit, at that time, any evidence you have in oral or written form to refute the charges (outlined in the correspondence of December 6, 2024 and within responses of the December 6, 2024 Email entitled "Notice of Charges and Hearing").*

*Please note that your Comprehensive Response to the Special School Board Hearing document and your Email messages addressed directly to the School Board Members have been forwarded to the members of the Collinsville School District Board of Education.*

*Sincerely,*

*Brad Hyre*

On Mon, Dec 9, 2024 at 4:55 PM Jeffrey Luffman <jeffrey.luffman@outlook.com> wrote:

> Sir, in your notice of chargers you mentioned providing evidence to defend myself
>
>
> Jeff Luffman
>
> Captain, US Army (Retired)
>
> B.S. Health and Physical Education
>
> Cell 6366754864

---

**From:** Bradley Hyre <bhyre@cusd.kahoks.org>
**Date:** Monday, December 9, 2024 at 16:43
**To:** jeffrey.luffman@outlook.com <jeffrey.luffman@outlook.com>
**Subject:** Notice of Charges and Hearing Response

*Dear Mr. Luffman.*

*Thank you for your Email responses to my Email of December 6, 2024 (Notice of Charges and Hearing).*

*Please know that we will forward your responses to the Board of Education prior to the scheduled Special Board Meeting scheduled for December 16, 2024 at 5:30PM at the Administrative Annex located at 123 West Clay Street, Collinsville, Illinois.*

*In addition, please know that your complaints are currently being investigated by Ms. Latoya Berry-Coleman, CUSD10 Director of Curriculum and Instruction and CUSD10 Complaint Manager in compliance with Board Policy 2:260.*

*The hearing will be conducted at the Special Board Meeting on December 16, 2024. Please note that the* link *that you included in your Email response is for the Collinsville Independent School District, located in Collinsville, Texas (noted at the bottom of the website link). The agenda for the Special Meeting of the Collinsville CUSD10 in Collinsville, Illinois will be posted to the District's website under the* Board of Education *tab.*

*Within the notice of hearing sent to you via Email, Regular Mail and Certified Mail, return receipt requested, CUSD10 Board of Education Policy 8:30 was included for your reference.*

*Lastly, please note, the District intends to use the emails you sent on December 6, 2024 (4:41PM), December 7 (5:58AM, 7:34AM, 4:31PM, and 6:42PM); December 8 (4:48AM, 4:5AM, 5:07AM, 5:16AM, 5:19AAM, 5:22AM, 5:27AM, 5:34AM, 5:39AM, 5:48AM, 5:52AM, 6:01AM, 6:18AM, 6:41AM, 7:16AM, 7:18AM); December 9, 2024 (4:37AM, 5:56AM, 6:28AM, 7:58AM, and 9:12AM, 11:35AM) and any additional emails you may send between now and the hearing, as further evidence of your ongoing misconduct.*

*Sincerely,*

*Brad Hyre*

--

**Brad Hyre**

Assistant Superintendent - Student Services

Collinsville Community Schools

123 West Clay Avenue
Collinsville, Illinois 62234
PH: 618-346-6350 x4235
Email: bhyre@cusd.kahoks.org

*"Do something today that your future self will thank you for."*

SPAM Alert: If you are expecting, but do not receive, a reply to this email within 72 hours, please contact me using one of the alternative methods below (phone or fax). Due to SPAM blocking on our email server, your message may be inadvertently blocked. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you should receive this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you received this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

--

**Brad Hyre**
Assistant Superintendent - Student Services
Collinsville Community Schools
123 West Clay Avenue
Collinsville, Illinois 62234
PH: 618-346-6350 x4235
Email: bhyre@cusd.kahoks.org

*"Do something today that your future self will thank you for."*

SPAM Alert: If you are expecting, but do not receive, a reply to this email within 72 hours, please contact me using one of the alternative methods below (phone or fax). Due to SPAM blocking on our email server, your message may be inadvertently blocked. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you should receive this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you received this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

Outlook

---

**Re: Notice of Charges and Hearing Response**

---

**From** Jeffrey Luffman <jeffrey.luffman@outlook.com>

**Date** Wed 12/11/2024 3:02 AM

**To** Bradley Hyre <bhyre@cusd.kahoks.org>

Thank you sir. I think you said if I have any questions, I could ask. I've asked a lot of questions. Could I please have some answers. Are your answers covered by your attorney client privilege?

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Bradley Hyre <bhyre@cusd.kahoks.org>
**Sent:** Tuesday, December 10, 2024 4:36:16 PM
**To:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Subject:** Re: Notice of Charges and Hearing Response

*Hello Mr. Luffman.*

*Thank you for your Email correspondence.*

*As outlined in my correspondence of December 6, 2024, you may attend the hearing scheduled on December 16, 2024 and submit, at that time, any evidence you have in oral or written form to refute the charges (outlined in the correspondence of December 6, 2024 and within responses of the December 6, 2024 Email entitled "Notice of Charges and Hearing").*

*Please note that your Comprehensive Response to the Special School Board Hearing document and your Email messages addressed directly to the School Board Members have been forwarded to the members of the Collinsville School District Board of Education.*

*Sincerely,*

*Brad Hyre*

On Mon, Dec 9, 2024 at 4:55 PM Jeffrey Luffman <jeffrey.luffman@outlook.com> wrote:

> Sir, in your notice of chargers you mentioned providing evidence to defend myself
>
>
> Jeff Luffman

Captain, US Army (Retired)

B.S. Health and Physical Education

Cell 6366754864

**From:** Bradley Hyre <bhyre@cusd.kahoks.org>
**Date:** Monday, December 9, 2024 at 16:43
**To:** jeffrey.luffman@outlook.com <jeffrey.luffman@outlook.com>
**Subject:** Notice of Charges and Hearing Response

*Dear Mr. Luffman,*

*Thank you for your Email responses to my Email of December 6, 2024 (Notice of Charges and Hearing).*

*Please know that we will forward your responses to the Board of Education prior to the scheduled Special Board Meeting scheduled for December 16, 2024 at 5:30PM at the Administrative Annex located at 123 West Clay Street, Collinsville, Illinois.*

*In addition, please know that your complaints are currently being investigated by Ms. Latoya Berry-Coleman, CUSD10 Director of Curriculum and Instruction and CUSD10 Complaint Manager in compliance with Board Policy 2:260.*

*The hearing will be conducted at the Special Board Meeting on December 16, 2024.  Please note that the link that you included in your Email response is for the Collinsville Independent School District, located in Collinsville, Texas (noted at the bottom of the website link).  The agenda for the Special Meeting of the Collinsville CUSD10 in Collinsville, Illinois will be posted to the District's website under the Board of Education tab.*

*Within the notice of hearing sent to you via Email, Regular Mail and Certified Mail, return receipt requested, CUSD10 Board of Education Policy 8:30 was included for your reference.*

*Lastly, please note, the District intends to use the emails you sent on December 6, 2024 (4:41PM), December 7 (5:58AM, 7:34AM, 4:31PM, and 6:42PM); December 8 (4:48AM, 4:5AM, 5:07AM, 5:16AM, 5:19AAM, 5:22AM, 5:27AM, 5:34AM, 5:39AM, 5:48AM, 5:52AM, 6:01AM, 6:18AM, 6:41AM, 7:16AM, 7:18AM); December 9, 2024 (4:37AM, 5:56AM, 6:28AM, 7:58AM, and 9:12AM, 11:35AM) and any additional emails you may send between now and the hearing, as further evidence of your ongoing misconduct.*

*Sincerely,*

*Brad Hyre*

--

Brad Hyre

Assistant Superintendent - Student Services

Collinsville Community Schools

123 West Clay Avenue
Collinsville, Illinois 62234
PH: 618-346-6350 x4235
Email: bhyre@cusd.kahoks.org

*"Do something today that your future self will thank you for."*

SPAM Alert: If you are expecting, but do not receive, a reply to this email within 72 hours, please contact me using one of the alternative methods below (phone or fax). Due to SPAM blocking on our email server, your message may be inadvertently blocked. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you should receive this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain

confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you received this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

--

Brad Hyre
Assistant Superintendent – Student Services
Collinsville Community Schools
123 West Clay Avenue
Collinsville, Illinois 62234
PH: 618-346-6350 x4235
Email: bhyre@cusd.kahoks.org

*"Do something today that your future self will thank you for."*

SPAM Alert: If you are expecting, but do not receive, a reply to this email within 72 hours, please contact me using one of the alternative methods below (phone or fax). Due to SPAM blocking on our email server, your message may be inadvertently blocked. Thank you.
This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you should receive this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you received this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

Outlook

## Re: Notice of Charges and Hearing Response

**From** Jeffrey Luffman <jeffrey.luffman@outlook.com>

**Date** Wed 12/11/2024 3:43 AM

**To** Bradley Hyre <bhyre@cusd.kahoks.org>; Susan Frechman <sfrechma@cusd.kahoks.org>; Public Access <Public.Access@ilag.gov>; Lauren Bonner <lauren_bonner@durbin.senate.gov>

**Cc** Shelia Schneider <shelia@thekaufmanfund.org>

sir, one more thing. Can I please have the agenda and minutes to the open meeting that Mrs Rader invited Ms Rozycki to to discuss her ongoing problems. I didn't get that information from Mrs Rader.

Can we see how a school board that had an open meeting where the teacher invited mom and not dad is illegal.?

Can I please get a copy of my response the school board received that you mentioned was provided by you to the school board ?

Ms Rozycki is not the intended recipient of the communication she was provided by my FOIA request

Please cite the law you use to provide records to a citizen that did not submit the FOIA or ISSRA request.

Can we see how that school board has lost impartiality a long time ago?

We could clear so much up if you all could cite the law you use to delete, destroy and resend electronic communications that are classified as public records

Furthermore recommend a formal FOIA request process that keeps track in an easy way the request, date of acknowledgment and the response date.

if someone could just provide the law that contradicts the Illinois Local Records Act that safeguards and defines public records. Public records are further defined in ISSRA.

That you've concluded every communication with a cheerful invitation to ask you questions and then say I am petitioning a public official too frequently when I am trying to defend myself is just not cool.

The first and 14th amendment come to my mind.

Certainly there is no precedent in case law for what we have here. The burden of proof is on the district at some point to address how the school can bar me in ten business days but have a 60 day timeline to conduct the It's internal investigation on yourselves.

The results of the investigation are important to my defense

Anyone care to remind me why all this information is being covered under the confidentiality or privilege under attorney client privilege on the district communications?

These are OUR rights. Not just mine.

When people's feeling are protected over our constitutional rights our country is serious jeopardy

It's disturbing.


Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Sent:** Wednesday, December 11, 2024 3:02:32 AM
**To:** Bradley Hyre <bhyre@cusd.kahoks.org>
**Subject:** Re: Notice of Charges and Hearing Response

Thank you sir. I think you said if I have any questions, I could ask. I've asked a lot of questions. Could I please have some answers. Are your answers covered by your attorney client privilege?

Jeff Luffman
9123187505
6366754864
jeffrey.luffman@outlook.com

---

**From:** Bradley Hyre <bhyre@cusd.kahoks.org>
**Sent:** Tuesday, December 10, 2024 4:36:16 PM
**To:** Jeffrey Luffman <jeffrey.luffman@outlook.com>
**Subject:** Re: Notice of Charges and Hearing Response

*Hello Mr. Luffman.*

*Thank you for your Email correspondence.*

*As outlined in my correspondence of December 6, 2024, you may attend the hearing scheduled on December 16, 2024 and submit, at that time, any evidence you have in oral or written form to refute the charges (outlined in the correspondence of December 6, 2024 and within responses of the December 6, 2024 Email entitled "Notice of Charges and Hearing").*

*Please note that your Comprehensive Response to the Special School Board Hearing document and your Email messages addressed directly to the School Board Members have been forwarded to the*

*members of the Collinsville School District Board of Education.*

*Sincerely,*

*Brad Hyre*

On Mon, Dec 9, 2024 at 4:55 PM Jeffrey Luffman <jeffrey.luffman@outlook.com> wrote:

> Sir, in your notice of chargers you mentioned providing evidence to defend myself
>
>
> Jeff Luffman
>
> Captain, US Army (Retired)
>
> B.S. Health and Physical Education
>
> Cell 6366754864
>
>
>
>
> **From:** Bradley Hyre <bhyre@cusd.kahoks.org>
> **Date:** Monday, December 9, 2024 at 16:43
> **To:** jeffrey.luffman@outlook.com <jeffrey.luffman@outlook.com>
> **Subject:** Notice of Charges and Hearing Response
>
> *Dear Mr. Luffman.*
>
>
> *Thank you for your Email responses to my Email of December 6, 2024 (Notice of Charges and Hearing).*
>
>
> *Please know that we will forward your responses to the Board of Education prior to the scheduled Special Board Meeting scheduled for December 16, 2024 at 5:30PM at the Administrative Annex located at 123 West Clay Street, Collinsville, Illinois.*
>
>
> *In addition, please know that your complaints are currently being investigated by Ms. Latoya Berry-Coleman, CUSD10 Director of Curriculum and Instruction and CUSD10 Complaint Manager in compliance with Board Policy 2:260.*

*The hearing will be conducted at the Special Board Meeting on December 16, 2024.  Please note that the* [link](link) *that you included in your Email response is for the Collinsville Independent School District, located in Collinsville, Texas (noted at the bottom of the website link).  The agenda for the Special Meeting of the Collinsville CUSD10 in Collinsville, Illinois will be posted to the District's website under the* [Board of Education](Board of Education) *tab.*

*Within the notice of hearing sent to you via Email, Regular Mail and Certified Mail, return receipt requested, CUSD10 Board of Education Policy 8:30 was included for your reference.*

*Lastly, please note, the District intends to use the emails you sent on December 6, 2024 (4:41PM), December 7 (5:58AM, 7:34AM, 4:31PM, and 6:42PM); December 8 (4:48AM, 4:5AM, 5:07AM, 5:16AM, 5:19AAM, 5:22AM, 5:27AM, 5:34AM, 5:39AM, 5:48AM, 5:52AM, 6:01AM, 6:18AM, 6:41AM, 7:16AM, 7:18AM); December 9, 2024 (4:37AM, 5:56AM, 6:28AM, 7:58AM, and 9:12AM, 11:35AM) and any additional emails you may send between now and the hearing, as further evidence of your ongoing misconduct.*

*Sincerely,*

*Brad Hyre*

--

Brad Hyre

Assistant Superintendent - Student Services

Collinsville Community Schools

123 West Clay Avenue
Collinsville, Illinois 62234
PH: [618-346-6350](618-346-6350) x4235
Email: [bhyre@cusd.kahoks.org](bhyre@cusd.kahoks.org)

*"Do something today that your future self will thank you for."*

SPAM Alert: If you are expecting, but do not receive, a reply to this email within 72 hours, please contact me using one of the alternative methods below (phone or fax). Due to SPAM blocking on our email server, your message may be inadvertently blocked. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you should receive this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you received this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

--

Brad Hyre
Assistant Superintendent - Student Services
Collinsville Community Schools
123 West Clay Avenue
Collinsville, Illinois 62234
PH: 618-346-6350 x4235
Email: bhyre@cusd.kahoks.org

*"Do something today that your future self will thank you for."*

SPAM Alert: If you are expecting, but do not receive, a reply to this email within 72 hours, please contact me using one of the alternative methods below (phone or fax). Due to SPAM blocking on our email server, your message may be inadvertently blocked. Thank you.
This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you should receive this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you received this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

 Outlook

## Fw: Notice of Charges and Hearing Response

**From** Jeffrey Luffman <jeffrey.luffman@outlook.com>

**Date** Tue 04/15/2025 6:15 AM

**To** bmundorf@gmschoollaw.com <bmundorf@gmschoollaw.com>; Dana Bond <dbond@gmschoollaw.com>; sguin@gmschoollaw.com <sguin@gmschoollaw.com>; cmundorf@gmschoollaw.com <cmundorf@gmschoollaw.com>; ehanses@gmschoollaw.com <ehanses@gmschoollaw.com>; amcdaniel@gmschoollaw.com <amcdaniel@gmschoollaw.com>; jbernard@gmschoollaw.com <jbernard@gmschoollaw.com>

**Cc** dfahrenkamp@gmail.com <dfahrenkamp@gmail.com>; Michael Wesley <mwesley@michaelwesleylaw.com>

**Bcc** Ethics <ethics.oeig@ilag.gov>; criminal.division@usdoj.gov <criminal.division@usdoj.gov>; Senator Tammy Duckworth <correspondence@duckworth.senate.gov>

Dear Counsel,

I am requesting a binding legal opinion from your office regarding Assistant Superintendent Bradley Hyre's December 9, 2024, email (forwarder below) in which he stated the District intends to use my written responses—sent in direct response to the Notice of Charges issued on December 6, 2024—as further evidence of my alleged misconduct. This raises multiple concerns of serious legal and procedural violations.

Mr. Hyre's statement explicitly confirms that:

1. I was **already banned** from school property as of December 6, **prior** to the hearing scheduled for December 16.

2. My written responses—offered to defend myself against the allegations—are being used **as additional evidence of guilt**, rather than considered as part of a fair and impartial defense.

This creates the clear appearance that the District had **predetermined my guilt** and that the scheduled hearing was merely perfunctory, lacking neutrality, due process, or a meaningful opportunity to be heard. Using my own defense statements to reinforce the administration's accusations—while denying me the right to attend in person, to present witnesses, or to have counsel—constitutes a **constructive denial of due process** under the Fourteenth Amendment and violates both procedural fairness and fundamental constitutional protections.

Accordingly, I request your binding legal opinion on the following:

- Was it lawful and procedurally sound for the District to treat my defense responses as evidence of guilt?

- How can the District justify banning me in advance of the hearing, and still claim the hearing was fair or compliant with Board Policy 8:30, Illinois administrative procedure, or constitutional due process?

- What role did District counsel play in advising the administration on this process, and what safeguards—if any—were put in place to ensure impartiality?

Thank you for your attention to this matter

Jeffrey Luffman
6366754864
jeffrey.luffman@outlook.com

---

**From:** Jeffrey Luffman
**Sent:** Monday, December 09, 2024 4:55 PM
**To:** Bradley Hyre
**Cc:** tony@millerkinglaw.com
**Subject:** Re: Notice of Charges and Hearing Response

Sir, in your notice of chargers you mentioned providing evidence to defend myself

Jeff Luffman
Captain, US Army (Retired)
B.S. Health and Physical Education
Cell 6366754864

---

**From:** Bradley Hyre <bhyre@cusd.kahoks.org>
**Date:** Monday, December 9, 2024 at 16:43
**To:** jeffrey.luffman@outlook.com <jeffrey.luffman@outlook.com>
**Subject:** Notice of Charges and Hearing Response

*Dear Mr. Luffman.*

*Thank you for your Email responses to my Email of December 6, 2024 (Notice of Charges and Hearing).*

*Please know that we will forward your responses to the Board of Education prior to the scheduled Special Board Meeting scheduled for December 16, 2024 at 5:30PM at the Administrative Annex located at 123 West Clay Street, Collinsville, Illinois.*

*In addition, please know that your complaints are currently being investigated by Ms. Latoya Berry-Coleman, CUSD10 Director of Curriculum and Instruction and CUSD10 Complaint Manager in compliance with Board Policy 2:260.*

*The hearing will be conducted at the Special Board Meeting on December 16, 2024. Please note that the link that you included in your Email response is for the Collinsville Independent School District, located in Collinsville, Texas (noted at the bottom of the website link). The agenda for the Special Meeting of the Collinsville CUSD10 in Collinsville, Illinois will be posted to the District's website under the Board of Education tab.*

*Within the notice of hearing sent to you via Email, Regular Mail and Certified Mail, return receipt requested, CUSD10 Board of Education Policy 8:30 was included for your reference.*

*Lastly, please note, the District intends to use the emails you sent on December 6, 2024 (4:41PM), December 7 (5:58AM, 7:34AM, 4:31PM, and 6:42PM); December 8 (4:48AM, 4:5AM, 5:07AM, 5:16AM, 5:19AAM, 5:22AM, 5:27AM, 5:34AM, 5:39AM, 5:48AM, 5:52AM, 6:01AM, 6:18AM, 6:41AM, 7:16AM, 7:18AM); December 9, 2024 (4:37AM, 5:56AM, 6:28AM, 7:58AM, and 9:12AM, 11:35AM) and any additional emails you may send between now and the hearing, as further evidence of your ongoing misconduct.*

*Sincerely,*

*Brad Hyre*

--

Brad Hyre

Assistant Superintendent – Student Services

Collinsville Community Schools

123 West Clay Avenue

Collinsville, Illinois 62234

PH: 618-346-6350 x4235

Email: bhyre@cusd.kahoks.org

*"Do something today that your future self will thank you for."*

SPAM Alert: If you are expecting, but do not receive, a reply to this email within 72 hours, please contact me using one of the alternative methods below (phone or fax). Due to SPAM blocking on our email server, your message may be inadvertently blocked. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you should receive this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you received this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.

 **Outlook**

---

**Press Alert: Civil Rights Retaliation Scandal Unfolding at Collinsville CUSD #10 – Public Meeting April 28, 2025**

---

**From** Jeffrey Luffman <jeffrey.luffman@outlook.com>

**Date** Sat 04/26/2025 9:01 PM

**To** newsmanager@foxnews.com <newsmanager@foxnews.com>; news@riverfronttimes.com <news@riverfronttimes.com>; editor@stlmag.com <editor@stlmag.com>; tips@postdispatch.com <tips@postdispatch.com>; info@bettergov.org <info@bettergov.org>; contact@courthousenews.com <contact@courthousenews.com>; contact@cu-citizenaccess.org <contact@cu-citizenaccess.org>; info@thecentersquare.com <info@thecentersquare.com>; kmoxnews@kmox.com <kmoxnews@kmox.com>; tips@wbez.org <tips@wbez.org>; editor@molawyersmedia.com <editor@molawyersmedia.com>; editor@illinoistimes.com <editor@illinoistimes.com>; sjrnews@sj-r.com <sjrnews@sj-r.com>; editor@springfieldbusinessjournal.com <editor@springfieldbusinessjournal.com>; news@wics.com <news@wics.com>; news@foxillinois.com <news@foxillinois.com>; nprillinois@uis.org <nprillinois@uis.org>; news@wmay.com <news@wmay.com>; news@wtax.com <news@wtax.com>; newsmanager@foxnews.com <newsmanager@foxnews.com>

**Cc** Senator Tammy Duckworth <correspondence@duckworth.senate.gov>; Public Access <public.access@ilag.gov>; Jones, Joshua <joshua.jones@ilag.gov>; ethics.oeig@ilag.gov <ethics.oeig@ilag.gov>; criminal.division@usdoj.gov <criminal.division@usdoj.gov>; information@iardc.org <information@iardc.org>

**Bcc** info@halemonico.com <info@halemonico.com>

Dear Members of the Press,

I am writing to alert you to an escalating civil rights and educational access crisis involving Collinsville Community Unit School District #10 (CUSD #10), Superintendent Brad Skertich, and local government officials.

As of today, I have formally submitted documented complaints and evidence to the U.S. Department of Justice Civil Rights Division, the U.S. Department of Education Office for Civil Rights (OCR), the Illinois State Board of Education (ISBE), and the Illinois Attorney Registration and Disciplinary Commission (ARDC) alleging:
- First Amendment retaliation against a veteran parent for peaceful advocacy regarding educational services evidenced by the Collinsville Police issuing a harassment citation yesterday for emailing Brad Skertich regarding my child's attendance at school (https://youtube.com/shorts/ptpHTB4KI48?si=lAf_Yb2y5sMG7DV1),
- Violations of federal Child Find obligations under the Individuals with Disabilities Education Act (IDEA),
- Suppression of public participation and Freedom of Information Act (FOIA) retaliation,
- Unlawful communication bans and harassment citations targeting protected speech,
- Child exposure to unsafe environmental conditions connected to cannabis activities in a household with custody responsibilities.

A regular meeting of the Collinsville CUSD #10 Board of Education is scheduled for Monday, April 28, 2025 at [insert meeting time and location].

I have demanded the immediate removal of Superintendent Brad Skertich for documented misconduct and violations of federal constitutional and educational rights.
Oversight agencies have been formally notified and are monitoring the situation.

This Board meeting presents an important opportunity for public accountability —

and your presence could bring sunlight to the serious civil rights and public trust issues unfolding at the local level. I feel this is a public matter that should be discussed in a open meeting.

The Collinsville CUSD #10 School Board is facing mounting pressure to address the documented misconduct of Superintendent Brad Skertich. Under the Illinois Open Meetings Act (5 ILCS 120/1 et seq.), public bodies must conduct the people's business openly.

While limited personnel discussions may occur in closed session under Section 2(c)(1), any final action — including accepting a resignation, initiating removal, or discussing termination — **must occur publicly in an open meeting** with proper public notice and a public vote (**5 ILCS 120/2(e)**).

Attempting to hide Skertich's resignation or removal discussions behind closed doors would violate state law, expose the Board to civil penalties, and void any secret decisions.

The public has a right to transparency concerning a taxpayer-funded official accused of serious civil rights violations. **Any effort to suppress these proceedings from public view will be a direct violation of the law — and further evidence of a systemic cover-up.**

I am prepared to provide:
- FOIA evidence,
- Public records,
- Video documentation,
- Sworn affidavits,
- Federal complaint filings.

This is a recording where Officer Lacroix from Collinsville PD issues a citation over the phone for contacting Collinsville Superintendent Brad Skertich feels harassed by my emails. He issued a communication plan (https://acrobat.adobe.com/id/urn:aaid:sc:US:a036698e-a195-411b-ac48-c7750b3e97ca)contrary to the first amendment to limit my access to contact my child's school and now he has totally taken my ability to advocate for my child who was just diagnosed with hearing loss and requires a IDEA Child evaluation for IEP 504. Find ID Thank you for your attention to this urgent matter of public concern.

This email a forward of my demand for resignation to the Collinsville School Board to be discussed at the school board meeting scheduled for April 28, 2025 at 6:30 PM https://kahoks.org/boardmeetings

Respectfully,
Jeffrey Luffman
Retired U.S. Army Captain
Civil Rights Advocate | Parental Rights Advocate
jeffrey.luffman@outlook.com
636-675-4864

_____

Dear FOIA Officer, I sent the following message to the Collinsville School Board. Please provide the message received by FOIA request response along with the meeting minutes for the scheduled 28 April 2025 school board meeting confirming the board received this message

Dear Collinsville CUSD #10 Board Members,


I am writing today to formally demand the immediate removal of Superintendent Brad Skertich from his position due to serious, ongoing misconduct, constitutional violations, and violations of federal education law that have placed the District, the Board, and the community at extraordinary legal and financial risk.

Superintendent Skertich has engaged in conduct that includes:

- Retaliation against a parent for exercising constitutionally protected First Amendment advocacy;

- Initiating unlawful communication restrictions to suppress protected speech;

- Orchestrating baseless welfare checks without probable cause;

- Initiating harassment citations in retaliation for advocacy for a disabled student;

- Failing to ensure compliance with Child Find obligations under IDEA (20 U.S.C. § 1412(a)(3));

- Blocking parental participation in education planning in violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794);

- Endangering a student's right to a Free Appropriate Public Education (FAPE) under federal law;

- Causing the District to be reported to the United States Department of Education Office for Civil Rights (OCR), the United States Department of Justice Civil Rights Division (DOJ), the Illinois State Board of Education (ISBE), and other federal oversight bodies;

- Exposing Collinsville CUSD #10 Board Members personally to potential civil rights lawsuits under 42 U.S.C. § 1983 and § 1985;

- Damaging the public trust, eroding parental rights, and putting the District's federal funding at risk.


Superintendent Skertich's continued employment is untenable given the documented evidence of:

- Ongoing retaliation against a veteran parent,

- Suppression of parental rights in special education,

- Misuse of government power to silence constitutionally protected speech, and

- Mismanagement resulting in imminent federal oversight and possible sanctions against the District.


Every day Superintendent Skertich remains in office increases the exposure of the Board and the District to federal civil rights litigation, regulatory intervention, and devastating public scandal.


New Board Members should carefully consider their own personal exposure and fiduciary obligations under the law.

Continuing to protect Superintendent Skertich after documented constitutional violations have been brought to your attention may constitute deliberate indifference and expose you to personal liability.

I respectfully demand that the Board immediately initiate proceedings to terminate Superintendent Brad Skertich's employment for cause, and that a neutral third-party compliance review of District operations regarding parental rights, IDEA compliance, First Amendment retaliation, and retaliation under color of law be ordered immediately.

I am fully prepared to provide supporting documentary evidence (over 73 exhibits), public records, sworn affidavits, FOIA responses, and communications with federal oversight agencies upon request.

The longer you delay corrective action, the greater the risk to yourselves, the District, and the public trust.

Respectfully,

Jeffrey Luffman

Retired U.S. Army Captain

Civil Rights Advocate | Parental Rights Advocate

jeffrey.luffman@outlook.com

636-675-4864

Messages sent to the board of education are received during district business hours.

This is an automated message was sent to you by the --> Form Notifications add-on for Google Forms.

This transmission is intended and restricted for use by the above addressee only. It may contain confidential and/or privileged information exempt from disclosure under federal or state law. In the event some other person or entity receives this transmission, said recipient is hereby notified that any dissemination, distribution, or duplication of this transmission or its contents is prohibited. If you received this transmission in error, please call us immediately at 618-346-6350. Delete the file from your system and destroy any hard copies of this transmission. Thank you.